[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————————

No. 94-9215

———————————————

D. C. Docket No. 94-3-COL


BICKERSTAFF CLAY PRODUCTS COMPANY, INC.,


                                        Plaintiff-Appellee,


                    versus


HARRIS COUNTY, GEORGIA, By and through
its Board of Commissioners; GEORGE ELMORE;
DANNY BRIDGES; CARL C. HOBBS, III; WALLACE
MARRINER; WARREN POPP,


                                     Defendants-Appellants.


———————————————

Appeal from the United States District Court
for the Middle District of Georgia

———————————————

**(July 16, 1996)**


Before TJOFLAT, Chief Judge, CARNES, Circuit Judge, and FAY,
Senior Circuit Judge.

TJOFLAT, Chief Judge:

In this case, a company challenges under several provisions of state and federal law the decision of a county board of commissioners to rezone the company's property. The district court granted injunctive relief in favor of the company, and the county took this interlocutory appeal. For the reasons that follow, we affirm in part, reverse in part, and vacate in part.

I.

A.

The property in question is a landlocked 161-acre tract located in southwest Harris County, Georgia, along Interstate Highway 185. Appellee Bickerstaff Clay Products, Inc. ("Bickerstaff"), a brick manufacturing company, bought the property in 1960 because of the property's rich reserves of a mineral used in the brickmaking process. Bickerstaff uses a form of rock called weathered mylonite in the manufacture of bricks; the Harris County property lies along a vein of such rock. At the time Bickerstaff purchased the property, it had no immediate need to mine the weathered mylonite on the property. It conducted several test drills on the property and dug a trench to determine the extent of the mylonite deposit, but otherwise did not mine the property. Instead, Bickerstaff held the property in its mineral reserves for future use.

In 1984, the governing entity for Harris County, a five-member Board of Commissioners, enacted a county-wide zoning ordinance, including a comprehensive land-use plan for the county.  The ordinance provided that initial determinations on zoning matters such as rezoning requests would be studied by the county planner's office, which would recommend the denial or granting of the request to a planning commission.  The planning commission would hold a public meeting on the rezoning request, and then would make recommendations to the Board of Commissioners, which would have final authority over all zoning decisions.  The 1984 ordinance zoned Bickerstaff's property A-1, which is the designation given to vacant property.[1]  Under the ordinance, the uses permitted on land zoned A-1 include general agriculture and forestry; the stated purpose of the A-1 category is to "preserve land areas suitable for eventual rezoning."

In 1993, Bickerstaff decided to make use of the mylonite reserves on the Harris County property.  To that end, Bickerstaff applied for a mining permit from the Georgia Environmental Protection Department.  In this application, Bickerstaff indicated the proposed duration and manner of the mining and explained how the company would shield surrounding areas from the noise and visual disturbances attendant to the operation.[2]  The

_____

[1]  The 1984 zoning ordinance was re-enacted almost verbatim in 1988 and again in 1990 to cure alleged procedural defects in the original ordinance.  The zoning of Bickerstaff's property was A-1 in all three ordinances.

[2]  The mining of mylonite does not involve any blasting or crushing of rock.  It is simply a digging operation, whereby the

3

application also contained provisions for land reclamation and runoff containment. In August of 1993, the Department granted Bickerstaff a permit to mine the property.

While preparing its application to the Environmental Protection Department, Bickerstaff discovered that the property had been zoned A-1, and that A-1 zoning would not permit mining. Armed with state approval of the mining operation, Bickerstaff sought to have the property rezoned M-2, which would permit mining. Bickerstaff presented its plan to the Harris County planner, who found that M-2 zoning was consistent with the county's comprehensive land-use plan and recommended that the planning commission approve the rezoning request. Following a public meeting, however, the planning commission voted to recommend that the Board of Commissioners deny the rezoning request.

The Board of Commissioners then held a public hearing on Bickerstaff's application for rezoning. In accordance with the zoning ordinance, Bickerstaff was allowed to present its proposed plan for mining its land, and any citizen with an opinion about Bickerstaff's proposal was allowed to speak. The Board made no decision on the rezoning request at that time, but instead met privately two weeks later to consider the request. At that meeting, the Chairman of the Board of Commissioners moved to rezone the property R-1, which allows only low-density

---

rock is extracted from the ground using backhoes and then hauled away in dump trucks.

4

residential development.[3]  Bickerstaff had not requested R-1 zoning, and had no notice that the Board would consider rezoning the property R-1.  The Chairman's motion passed by a vote of four to one.

## B.

Following the Board's decision, Bickerstaff brought this suit against Harris County, alleging violations of the United States Constitution, the Georgia Constitution, and state real property law.[4]  Bickerstaff's primary contention is that rezoning

---

[3]  R-1 is the designation given to land that is to be developed as a residential subdivision containing single-family lots.

[4]  Bickerstaff's amended complaint, the pleading before us, contains eight counts.  The complaint is a typical shotgun pleading, in that some of the counts present more than one discrete claim for relief.  See, e.g., Anderson v. District Bd. of Trustees, 77 F.3d 364, 366-67 (11th Cir. 1996).  Moreover, in some instances one cannot discern, with respect to a given claim for relief, the substantive rule giving rise to the claim.  For purposes of this appeal, we give Bickerstaff's complaint a liberal reading, and construe it as presenting the following claims for relief:

(1)  A takings claim pursuant to 42 U.S.C. § 1983 that seeks just compensation for the full value of the property under the Fifth and Fourteenth Amendments to the United States Constitution.  (Count one.)  This count also seeks an injunction, under an undisclosed rule of law, prohibiting the Board from preventing Bickerstaff from mining its property.

(2)  A claim under 42 U.S.C. § 1983 for money damages on the ground that the Board has violated Bickerstaff's (unspecified) "substantive rights" under the Fifth and Fourteenth Amendments. (Count two.)  This count also seeks the same injunctive relief as count one.  The district court appears to have interpreted this allegation as alleging a claim under the substantive component of the Fourteenth Amendment's Due Process Clause.

(3)  A claim under 42 U.S.C. § 1983 for money damages on the ground that, in reaching its zoning decision, the Board denied Bickerstaff its right to procedural due process under the Fifth

the property R-1 constituted a taking of Bickerstaff's property

because the rezoning rendered the property virtually useless: the

property cannot be developed as a residential subdivision because

---

and Fourteenth Amendments.  (Count three.)  This count also seeks the same injunctive relief as count one.

(4)  A takings claim under the Georgia Constitution, Article I, Section I, Paragraph I, and Article I, Section III, Paragraph I.  This claim seeks an injunction prohibiting the Board from preventing Bickerstaff from mining its property.  (Count four.)

(5)  A claim for a declaration that (unspecified) provisions of the United States and Georgia Constitutions grant Bickerstaff a "vested right" to mine the property.  (Count five.)  This count seeks in the alternative money damages for the full value of the property.

(6)  A claim that (unspecified) provisions of the United States Constitution and Georgia law and several provisions of the Harris County zoning ordinance grant Bickerstaff the right to mine the property as a "non-conforming use."  Bickerstaff seeks an injunction prohibiting the Board from preventing it from mining the property.  (Count six.)

(7)  A claim that the Board's denial of Bickerstaff's M-2 zoning request was "arbitrary and capricious" (under an unspecified provision of law) and also violates the Harris County zoning ordinance.  Bickerstaff seeks an injunction prohibiting the Board from preventing Bickerstaff from mining the property. (Count seven.)

(8)  A claim that the Harris County zoning ordinance is invalid under O.C.G.A. § 36-66-5 (1982), because of procedural irregularities in the adoption of the ordinance.  Bickerstaff seeks a declaration that the ordinance is invalid.  (Count eight.)

The district court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 to entertain Bickerstaff's federal constitutional claims.  The court entertained Bickerstaff's state-law claims under its supplemental jurisdiction.  The district court based its injunction only on the claims described in (1), (2), and (4)-(7) above.  Accordingly, we do not address the claims described in (3) and (8).

6

there is effectively no access to a public roadway.[5]  According to Bickerstaff, this taking was in violation of the Fifth and Fourteenth Amendments to the United States Constitution[6] and Article I of the Georgia Constitution[7] because the taking was accomplished (1) pursuant to an invalid exercise of the county's police power, and (2) without providing Bickerstaff just compensation.  Bickerstaff therefore asked the district court to award the company just compensation for a temporary taking, in the event the R-1 zoning was held invalid, or for a permanent taking if it was not.  See First English Evangelical Lutheran Church v. Los Angeles County, 482 U.S. 304, 107 S. Ct. 2378, 96 L. Ed. 2d 250 (1987) (recognizing a Takings Clause claim for the temporary deprivation of all use of private property).

---

[5]  Bickerstaff has a 20-foot-wide easement running 3,500 feet over neighboring land to Georgia Highway 315.  Bickerstaff contends, and the county does not dispute, that a residential subdivision must have at least one means of ingress and egress, and that, to accommodate a subdivision entrance, the easement would need to be at least 60 feet wide.

[6]  The Fifth Amendment's prohibition on takings for public use without just compensation is applied to the states through the Fourteenth Amendment.  See Chicago, B. & Q. R.R. v. Chicago, 166 U.S. 226, 239, 17 S. Ct. 581, 585, 41 L. Ed. 979 (1897). Further references in this opinion to a takings claim under the Fifth Amendment mean a takings claim under the Fifth and Fourteenth Amendments.

[7]  The Georgia Constitution does not have a takings clause. Georgia courts recognize takings claims, however, under the eminent domain provision of Article I, Section III, Paragraph I ("[P]rivate property shall not be taken or damaged for public purposes without just and adequate compensation being first paid.") and the due process provision of Article I, Section I, Paragraph I ("No person shall be deprived of life, liberty, or property except by due process of law.").  See Gradous v. Board of Comm'rs, 349 S.E.2d 707, 709 (Ga. 1986).

7

In its answer to Bickerstaff's complaint the county denied that it was liable under any of Bickerstaff's theories of recovery. As for Bickerstaff's Fifth Amendment claim, the county contended that the suit was not ripe for federal court review because Bickerstaff had not pursued its remedies in state court. See Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 186, 105 S. Ct. 3108, 3116, 87 L. Ed. 2d 126 (1985). The county noted that, although Bickerstaff had filed a suit on the same claims in the Harris County Superior Court, Bickerstaff had persuaded that court to stay its hand pending the outcome of the instant case. The county further contended that because the superior court had jurisdiction over the controversy, the instant case was barred.[8] The district court did not rule on

---

[8] The county provided the district court with no authority for the proposition that the pendency of the state court suit barred Bickerstaff's prosecution of this suit, and we know of none. We read the county's answer on this point as a request that the district court stay its hand until the state court proceeding ran its course.

On appeal, the county contends that Bickerstaff's Takings Clause and substantive due process claims are not ripe for federal district court adjudication and that, therefore, the district court should have dismissed them for want of subject matter jurisdiction. In addition, the county contends that the court, in the exercise of its discretion, should have dismissed Bickerstaff's remaining pendent state law claims. We disagree.

Bickerstaff's federal constitutional claims are not "frivolous," nor were they asserted "solely for the purpose of [giving the district court subject matter] jurisdiction." Bell v. Hood, 327 U.S. 678, 682-83, 66 S. Ct. 773, 776, 90 L. Ed. 939 (1946). Thus, the district court was not required to dismiss the pendent state-law claims, and it was within its discretion to decide the state-law issues.

these contentions and scheduled a bench trial on Bickerstaff's claims for declaratory and injunctive relief.

The bench trial focused on Bickerstaff's acquisition of the property, its plans to mine the land, and the circumstances surrounding the rezoning of the property R-1. After entertaining the parties' evidence, the court entered an order declaring the R-1 and prior A-1 zoning classifications invalid. The court enjoined the enforcement of either the R-1 or the A-1 zoning classification on both state and federal grounds. It concluded that these measures were "not substantially related to any valid health, safety or welfare considerations" and thus, under the due process clauses of both the state and federal constitutions, constituted invalid exercises of the county's police power. In addition, these classifications were enacted in derogation of Bickerstaff's right under Georgia law and the Harris County zoning ordinance to mine the property as either a vested right or a nonconforming use. The court thus enjoined the county from applying any zoning classification to the property other than M-2. Finally, the court held that the R-1 classification, by rendering Bickerstaff's property worthless, had effected a taking of the property without just compensation in violation of the state and federal constitutions. Proceedings to determine just compensation have been stayed pending our resolution of this appeal.

Following the district court's entry of the injunctive relief described above, the county took this interlocutory

appeal.  We have jurisdiction under 28 U.S.C. § 1292(a)(1) (1994).  We review the district court's factual findings for clear error.  Fed. R. Civ. P. 52(a).  Questions of law and mixed questions of law and fact are reviewed de novo.  See Nadler v. Mann, 951 F.2d 301, 311 (11th Cir. 1992).

## II.

As noted, the district court's injunction addressed three zoning classifications: A-1, R-1, and M-2.  The court invalidated the A-1 and R-1 classifications and ordered the Board to apply the M-2 classification to the property.  We summarily vacate the aspect of the court's injunction that prohibits the Board from applying any zoning classification to the property except M-2.  The court cited no authority, state or federal, for such action -- which, in effect, usurped the Board's legislative function -- and Bickerstaff has cited us to none.

In the discussion that follows, we address first the court's decision to strike down the A-1 zoning and conclude that Bickerstaff's challenge to that zoning is time barred.  Turning next to the Board's decision to zone the property R-1, we conclude that the court had no basis for invalidating the decision on the ground that Bickerstaff had acquired a right to mine the property as either a vested right or a nonconforming use under Georgia law.  The court's alternative holding -- that, under Georgia law, the Board's decision constituted a taking without just compensation -- is, however, correct.  We therefore

10

affirm the court's decision invalidating the R-1 zoning.  We vacate, though, the court's holding that the Board's decision also violated the United States Constitution, because Bickerstaff's federal claim is not ripe.[9]

### A.

Bickerstaff cannot challenge the county's original decision to zone the property A-1.  The property has been zoned A-1 since 1984, and Bickerstaff is barred from challenging this zoning not only by the applicable statute of limitations, see O.C.G.A. § 50-14-1(b), but also by the doctrine of laches.[10]  The provision of the district court's injunction invalidating the A-1 zoning is accordingly vacated.

---

[9]  We are mindful of the doctrine that a federal court should not pass on federal constitutional issues unless necessary to its decision.  See Ashwander v. Tennessee Valley Auth., 297 U.S. 288, 347, 56 S. Ct. 466, 482, 80 L. Ed. 688 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of.").  We believe that it is prudent to discuss the federal constitutional claims in this case because the damages issue remains to be litigated.  If we do not decide the federal constitutional claims, then the district court, in framing the issues for the damages trial, will likely provide for recovery under the Fifth Amendment Takings Clause and the substantive component of the Fourteenth Amendment's Due Process Clause.  If the district court submitted those claims to the jury, and an appeal followed, we would likely be required to reach the federal claims.  We believe it judicious to reach them now.

[10]  On appeal, Bickerstaff's brief is silent on these points and thus appears to concede them.

We consider now the merits of the remaining state-law grounds for the district court's invalidation of the R-1 zoning. They are: (1) that Bickerstaff had acquired a right to mine the property as a nonconforming use within the meaning of the Harris County zoning ordinance; (2) that Bickerstaff had acquired a "vested right" under the Georgia common law to mine the property; and (3) that the Board's R-1 rezoning of the property (and its refusal to rezone the property M-2) constituted a taking without just compensation in violation of the Georgia Constitution.

## 1.

The Harris County zoning ordinance defines a nonconforming use as "[a] building, structure or use of land existing at the time of enactment of this ordinance and which does not conform to the regulations of the district in which it is situated."  The court found that Bickerstaff's intention to mine the property was a "use of land" that existed at the time the zoning ordinance was enacted, because the ordinance defines "use" as "[t]he specific purpose for which land or building is designed, arranged, intended, or for which it is or may be occupied or maintained" (emphasis added).

In Georgia, however, "mere preliminary work not of a substantial nature does not constitute a nonconforming use; neither does a use which is merely contemplated for the future but unrealized as of the effective date of the regulation." Rainwater v. Coweta County Bd. of Zoning Appeals, 181 S.E.2d 540,

541 (Ga. Ct. App. 1971). Bickerstaff's drilling and testing on the property more than thirty years ago -- to determine the extent of the mylonite vein -- cannot be characterized as anything but preliminary, and its intention to mine the property was, in 1984 (when the Harris County zoning ordinance was enacted), a "use . . . merely contemplated for the future." Extending a nonconforming use to an owner's unrealized intentions for his property would mean that any property owner, whenever confronted with unfavorable zoning, could claim a nonconforming use by stating that he had always intended to use the property as, for instance, a shopping center, or an apartment complex, or an office park. Bickerstaff has not acquired the right to mine the property as a nonconforming use, and we reverse the district court's conclusion to the contrary.

2.

Bickerstaff contends, and the district court held, that it has a "vested right" to mine the property -- a right that the Board is powerless to limit. This right supposedly arose from the company's preliminary drilling and testing of the soil on the property. We do not believe that Georgia's vested rights doctrine extends that far.

The doctrine of vested rights that the district court applied in this case is derived from the principle of equitable estoppel. See Cohn Communities, Inc. v. Clayton County, 359 S.E.2d 887, 889 (Ga. 1987). The doctrine applies when a

13

"landowner, relying in good faith, upon some act or omission of the government, has made a substantial change in position or incurred such extensive obligation and expenses that it would be highly inequitable and unjust to destroy the rights he has acquired."[11] Id.

Bickerstaff has established none of these elements. While Bickerstaff's expenditures for the test drills may have risen to the level of "extensive obligation[s] and expenses," Harris County made no representations on which Bickerstaff could have relied or did rely. At no time between Bickerstaff's purchase of the property and the company's application for rezoning did any Harris County official promise Bickerstaff that the property would be zoned for mining. We therefore reverse the district court's holding that Bickerstaff has acquired a vested right to mine the property under Georgia law.

3.

In order to determine whether a zoning ordinance has effected a taking without just compensation in violation of the Georgia Constitution, see Ga. Const. art. I, § III, par. I, and

---

[11] The Georgia courts have applied the vested rights doctrine in cases where a property owner has materially changed his position in reliance on a zoning ordinance and government assurances that a building permit will issue. See, e.g., Barker v. County of Forsyth, 281 S.E.2d 549, 552 (Ga. 1981); Cohn Communities, 359 S.E.2d at 889. Whether the Georgia courts would extend the vested rights doctrine to cases such as Bickerstaff's is an open question. We need not reach the question because, as explained in the text, Bickerstaff has failed to meet the doctrine's requirements.

14

note 7 supra, courts employ a balancing test.  In the words of the Georgia Supreme Court, a court must "weigh[] the benefit to the public against the detriment to the individual."  Gradous v. Board of Comm'rs, 349 S.E.2d 707, 709 (Ga. 1986).  In practical terms, the balancing test means that an aggrieved landowner must show that the zoning decision "presents a significant detriment to the landowner and is insubstantially related to the public health, safety, morality, and welfare."  Id. at 709-10.

The district court found that the application of the R-1 zoning classification to Bickerstaff's property rendered the property virtually worthless.  We agree that the rezoning of Bickerstaff's property R-1 deprives the property of all reasonable economic use.  Thus, Bickerstaff has proven the first part of its Georgia takings claim: that the zoning "presents a significant detriment to" Bickerstaff.

The district court further concluded that the R-1 zoning was not substantially related to the public health, safety, morality, or welfare, and was thus an invalid exercise of the county's police power.  Although there is no formula for determining when government action exceeds the police power, the Georgia Supreme Court has held that a zoning decision that "completely fails to scrutinize the merits of the land in question and the impact of the decision upon the landowner's property rights" is an invalid exercise of the police power.  Barrett v. Hamby, 219 S.E.2d 399, 402 (Ga. 1975).

15

The county has presented no evidence indicating that the Board evaluated prospective uses for the property, conducted a study of the possible impact mining would have on neighboring property, or even considered the probable effect that R-1 zoning would have on the value of Bickerstaff's property. The members of the Board testified at trial that they thought the R-1 zoning was in the "best interests" of the county, but they offered no justification for this conclusion.

The exercise of the police power is not without limits. Where, as here, the governing entity "completely fail[s] to scrutinize" the balance between the public interest in the contemplated zoning and the impact of the zoning on the property, the entity's decision is beyond its police power. It is clear that the R-1 zoning had a significant detrimental effect on the value of Bickerstaff's property and that the Board had only vague and unsubstantiated conclusions to justify the zoning. Therefore, the rezoning of Bickerstaff's property constituted a taking of the property in violation of the Georgia Constitution.

### III.

The district court also held that the Board's decision to rezone Bickerstaff's property R-1 was invalid under the Takings Clause of the Fifth Amendment and the substantive component of the Due Process Clause of the Fourteenth Amendment. The court so held because it found that the zoning decision (1) effectively condemned Bickerstaff's property for a purpose not within the

16

county's police power to pursue and (2) failed to provide

Bickerstaff just compensation.[12]  In concluding that these two

elements made out a claim under both the Takings Clause and the

Due Process Clause, the district court did not consider whether

the Bickerstaff's takings claim subsumed its substantive due

process claim.  We hold that it does.

A.

The Takings Clause of the Fifth Amendment prohibits

government from condemning "private property . . . for public

use, without just compensation."  The clause applies in any case

in which government action renders private property worthless.[13]

See Agins v. Tiburon, 447 U.S. 255, 260-63, 100 S. Ct. 2138,

2141-43, 65 L. Ed. 2d 106 (1980); Lucas v. South Carolina Coastal

Council, 505 U.S. 1003, ___, 112 S. Ct.  2886, 2893, 120 L. Ed.

_____

[12]  The district court erred in holding that any zoning classification that is an invalid exercise of the police power constitutes a Fifth Amendment taking.  To constitute such a taking, the zoning classification must render the property worthless.  See Agins v. Tiburon, 447 U.S. 255, 260-63, 100 S. Ct. 2138, 2141-43, 65 L. Ed. 2d 106 (1980) (stating that government action that deprives a landowner of only part of the value of his property is not a taking prohibited by the Fifth Amendment).  Due to our disposition of Bickerstaff's Takings Clause claim, however, this error is of no moment.

[13]  A taking within the meaning of the amendment may occur in one of two ways.  First, the government, exercising its power of eminent domain, may institute a proceeding to condemn the landowner's property for a public use.  Second, a taking may occur when the government, exercising its police power, enacts a measure -- here, a zoning classification -- that effectively condemns the landowner's property without paying for it.  When the government has not instituted an eminent domain proceeding, the only way a property owner can vindicate his Takings Clause rights is to institute an inverse condemnation proceeding.  This is what Bickerstaff has done in this case.

17

2d 798 (1992) (government action effectively condemns a landowner's property if it denies him "all economically beneficial or productive use" of his property). Bickerstaff contends, and has established, that the R-1 zoning classification rendered its property worthless, and it seeks "just compensation" for its loss. Bickerstaff also contends that this "taking" was not for a "public use." Depending on the resolution of the public use issue,[14] Bickerstaff will be entitled to just compensation for either the temporary or permanent loss of use of the property.[15]

The substantive component of the Due Process Clause prohibits a government entity from applying to property a zoning

[14] The district court reached the public use issue and resolved it in favor of Bickerstaff. The court erred in doing so, however, because, as we explain in part III.B., infra, Bickerstaff's takings claim is not ripe.

[15] It is not necessary that Bickerstaff prevail on the public use issue in order to obtain just compensation for the loss of use of its property. If Bickerstaff succeeds in having the R-1 zoning classification declared invalid, its loss of use will be for a temporary term -- from the date the R-1 classification became operative to the date of its invalidation. See First English Evangelical Lutheran Church v. Los Angeles County, 482 U.S. 304, 107 S. Ct. 2378, 96 L. Ed. 2d 250 (1987). If Bickerstaff's public use challenge fails, its loss of use will be permanent and it will recover as just compensation the full value of the property.

With respect to this second scenario, Bickerstaff's Takings Clause and Due Process Clause claims differ. If, in the prosecution of the due process claim, the zoning classification were upheld, Bickerstaff would be entitled to no damages -- notwithstanding the complete taking of its property. Damages for a taking occasioned by the application of a valid zoning classification would be recoverable only under the Takings Clause. It thus becomes apparent that Bickerstaff's claim under the Takings Clause not only subsumes its substantive due process claim, as we point out infra, but is broader than that claim.

18

classification that bears no relationship to the "public health, safety, morals, or general welfare" and thus is beyond the government's police power. See Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 395, 47 S. Ct. 114, 121, 71 L. Ed. 303 (1926). A person whose property is affected by such a classification may challenge the measure and, if successful, may recover damages for any injury the classification may have caused him while it was operative. Here, Bickerstaff contends that the application of the R-1 zoning classification to its property is an invalid exercise of the county's police power and has rendered the property worthless. If Bickerstaff ultimately prevails on this issue, it may recover in damages the value of its temporary loss of use of the property.

This discussion makes it apparent that Bickerstaff's Takings Clause claim and its substantive due process claim are identical if the challenges to the validity of the R-1 zoning classification itself are evaluated under the same standard. That is, the claims are identical if the scope of "public use" under the Takings Clause and the scope of "police power" under the substantive component of the Due Process Clause are the same. The Supreme Court's decision in Hawaii Hous. Auth. v. Midkiff, 467 U.S. 229, 240, 104 S. Ct. 2321, 2329, 81 L. Ed. 2d 186 (1984), indicates that they are.

Midkiff involved a landowner's challenge to the validity of an Hawaii statute that provided for the condemnation of private land and the sale of such land to the landowners' lessees. The

landowners mounted their challenge under the "public use" component of the Takings Clause. They claimed that "the taking of [their] property for the purpose of reselling it to [their] lessees [was] not for a public purpose and hence violative of the Fifth Amendment command: '[N]or shall private property be taken for public use, without just compensation.'" Midkiff v. Tom, 483 F. Supp. 62, 65 (D. Haw. 1979).

In rejecting the landowner's challenge, the Supreme Court compared the scopes of "public use" under the Takings Clause and "police power" under the Due Process Clause. The Court concluded that "the public use requirement is . . . coterminous with the scope of a sovereign's police powers." Midkiff, 467 U.S. at 240, 104 S. Ct. at 2329; see also National R.R. Passenger Corp. v. Boston & Maine Corp., 503 U.S. 407, 422, 112 S. Ct. 1394, 1404, 118 L. Ed. 2d 52 (1992) ("We have held that the public use requirement of the Takings Clause is coterminous with the regulatory power."). Bickerstaff's Takings Clause and substantive due process challenges to the validity of the R-1 classification are therefore evaluated under the same standard.

Accordingly, Bickerstaff's Takings Clause claim subsumes its substantive due process claim unless it can be said that the Framers of the Bill of Rights, in addition to providing the substantive rights contained in the Takings Clause, meant to replicate by implication those same rights in the Due Process Clause. We do not believe that such duplication was intended. We therefore hold that Bickerstaff's challenge to the validity of

20

the R-1 zoning classification lies solely under the Takings Clause.[16]

B.

The foregoing discussion makes clear that the only federal constitutional ground supporting the district court's injunction is Bickerstaff's Fifth Amendment takings claim. That claim, however, is not ripe. See Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 186, 105 S. Ct. 3108, 3116, 87 L. Ed. 2d 126 (1985). A Takings Clause claim does not become ripe unless the state provides no remedy to compensate the landowner for the taking. A property owner cannot claim a violation of the Clause unless the state provides the landowner

---

[16] A reading of dicta in Eide v. Sarasota County, 908 F.2d 716 (11th Cir. 1990), cert. denied, 498 U.S. 1120, 111 S. Ct. 1073, 112 L. Ed. 2d 1179 (1991), may suggest at first blush that, in a case such as this where the zoning classification renders the property worthless, inverse condemnation claims under the Takings Clause and the substantive component of the Due Process Clause are not identical. See id. at 720-21.

We do not read Eide as drawing such a distinction. In posing a hypothetical Takings Clause claim, the Eide panel assumed sub silentio that the landowner was not questioning the public purpose, that is, the "public use," behind the zoning classification. In posing the hypothetical substantive due process claim, though, the panel assumed expressly that the landowner was questioning such public purpose. Were the panel to have assumed that, in both cases, the landowner questioned the public purpose behind the classification, we are satisfied that it would have reached the same conclusion we reach today.

Eide describes a second specie of substantive due process claims which is not presented in this case: a claim that a regulatory measure exceeds the government's police power but has not effected a taking. Eide refers to such a claim as "an 'arbitrary and capricious due process' claim." Id. at 721-22. Because the regulatory measure has not rendered the property worthless, this type of substantive due process claim is not foreclosed by the Takings Clause.

21

no procedure (such as an action for inverse condemnation) for obtaining just compensation.  <u>Williamson</u>, 473 U.S. at 195, 105 S. Ct. at 3121.

Bickerstaff contends that Georgia provides it no judicial mechanism for obtaining just compensation in this case; accordingly, its Takings Clause claim is ripe.  We disagree. Under Georgia law, a landowner may bring suit under the eminent domain and due process provisions of the Georgia Constitution, Ga. Const. art. I, § I, par. I and § III, par. I, to enjoin the enforcement of a zoning classification that effects a "taking" of his property.  <u>See, e.g.</u>, <u>Gradous v. Board of Comm'rs</u>, 349 S.E.2d 707 (Ga. 1986).  We find no Georgia cases denying a landowner just compensation for the temporary loss of use of his property while burdened with an invalid zoning classification; nor do we find any cases denying a landowner just compensation where a valid zoning classification effectively condemns his property. <u>See, e.g.</u>, <u>East-Bibb Twiggs Neighborhood Ass'n v. Macon Bibb Planning & Zoning Comm'n</u>, 888 F.2d 1573 (11th Cir. 1989), <u>aff'g</u> 662 F. Supp. 1465 (M.D. Ga. 1987), <u>amended and superseded</u>, 896 F.2d 1264 (11th Cir. 1989);  <u>see also</u> <u>Calibre Spring Hill, Ltd. v. Cobb County</u>, 715 F. Supp. 1577, 1581 (N.D. Ga. 1989).  <u>First English Evangelical Lutheran Church v. Los Angeles County</u>, 482 U.S. 304, 107 S. Ct. 2378, 96 L. Ed. 2d 250 (1987) holds that a state deprives a landowner of his rights under the Takings Clause if it denies him just compensation in either of these situations.

We assume that the Georgia courts will follow the holding of
First English.

We therefore do not hold that the Harris County Superior
Court will not as a matter of Georgia law recognize Bickerstaff's
takings claim and provide the company just compensation for
either a temporary or a permanent taking.  We hold, instead, that
because the superior court will entertain Bickerstaff's claim for
inverse condemnation, Bickerstaff's Fifth Amendment takings claim
is not ripe for federal district court review.


IV.

In conclusion, we affirm the district court's injunction
that invalidates the application of the R-1 zoning classification
to Bickerstaff's property, but we do so on only one ground: the
classification constitutes a taking of Bickerstaff's property in
violation of the Georgia Constitution.  We vacate the portions of
the injunction invalidating the A-1 zoning classification and
ordering the Board to apply the M-2 classification to the
property.   Finally, we vacate the portion of the injunction that
is based on Bickerstaff's Takings Clause and substantive due
process claims.  We direct the court to dismiss Bickerstaff's
Takings Clause claim as not ripe and to dismiss the substantive
due process claim because it states no case for relief.

We note that the district court has retained jurisdiction to
try Bickerstaff's claim for money damages for the temporary loss
of use of its property from the effective date of the Board's R-1

23

zoning decision to the receipt of our mandate.  That claim shall be tried under Georgia law.

SO ORDERED.