**M.D. HODGES ENTERPRISES, INC., Plaintiff,**

v.

**FULTON COUNTY, GEORGIA, et al., Defendants.**

**No. 1:02–CV–531–RLV.**

United States District Court, N.D. Georgia, Atlanta Division.

Nov. 5, 2003.

Charles Samuel Conerly, Daniel Niles Esrey and Peter M. Degnan, Alston & Bird, Atlanta, GA, for Plaintiff.

Larry Wayne Ramsey, Jr., and Renee Marie L'Eplattenier, Office of Fulton County Attorney, Atlanta, GA, for Defendant.

### ORDER

VINING, District Judge.

This is an action pursuant to 42 U.S.C. § 1983 in which the plaintiff alleges that its constitutional rights were violated when the defendants failed to rezone its property. The case was tried by the court, sitting without a jury, on August 23, 2003. The following will constitute the court's findings of fact and conclusions of law as required by Rule 52, Federal Rules of Civil Procedure.

### I. FACTUAL BACKGROUND

M.D. Hodges Enterprises, Inc. ["Hodges"] is the owner of a 55.15-acre tract of land located at the southwest corner of the intersection of Campbellton Road and Cascade Palmetto Highway, in Fulton County, Georgia ["the Property"]. The property is currently undeveloped and is zoned as follows: (1) the majority of the Property (approximately 39.78 acres) is zoned M–1A Conditional (light industrial), (2) approximately one acre is zoned Sub–A (residential), and (3) approximately 14 acres are zoned AG–1 (agricultural). The Sub–A and AG–1 zonings have been in place since adoption of the Fulton County Zoning Resolution and associated maps in 1955.

In 1971 the 39.78-acre tract was zoned M–1A subject to the following condition: development of the tract was limited to use solely by Southeastern Manufactured Housing Institute, Inc. ["SMHI"] as a headquarters and permanent display area for uninhabited mobile homes and uninhabited modular factory-built houses. This condition prohibits the development and use of the tract for any other purpose. SMHI no longer exists; consequently, the 39.78-acre tract cannot be developed in

any way under the current zoning classification.

Under Fulton County's relevant Comprehensive Land Use Plan, which is intended to provide long-term planning guidance for the county, the Property is designated as follows: (1) the 39.78-acre tract zoned M–1A Conditional and the one-acre Sub–A parcel are designated "Business Park/Light Industrial," and (2) the remaining acreage, zoned AG–1, is designated "Residential" at a density of three to five units per acre.

Hodges acquired the Property in three acquisitions in 1988 and 1989. It acquired the 39.78-acre parcel for $14,000 per acre, the one-acre parcel for $78,000, and the 14-acre parcel for $4,000 per acre. Hodges purchased the property with the intent to construct a distribution center. To this end, in March 2000, Hodges filed an application to rezone the Property to M–1A Conditional, for the purpose of constructing a 1,095,642 square foot distribution center.

The Fulton County Environment and Community Development staff recommended approval of the rezoning request, subject to certain conditions. The Fulton County Planning Commission also recommended conditional approval of the application. In July 2000, the Atlanta Regional Commission submitted to the defendants its written finding that the proposed development was in the best interest of the state of Georgia.

Prior to acting on Hodges's rezoning application, the defendants were told by the Deputy Director of the Department of Environment and Community Development that the Planning Staff's approval recommendation was based on the erroneous conclusion that the county's Comprehensive Land Use Plan designated the entire property as "Business Park/Light Industrial." The Deputy Director in-

formed the defendants that if the Staff had realized that 14 acres had been classified as "Residential," the Staff would not have recommended approval. With this information, the defendants deferred acting on the application for 60 days.

Hodges, after meeting with community representatives, reduced the size of the proposed center to approximately 760,000 square feet. However, despite this modification, the defendants denied the rezoning application on October 4, 2000. On October 31, 2000, Hodges filed suit in the Superior Court of Fulton County, Georgia, alleging that the defendants' denial of its rezoning application (1) constituted an unlawful 'taking' of M.D. Hodges' property under both the United States and Georgia Constitutions; (2) violated M.D. Hodges' rights to due process under both the United States and Georgia Constitutions; and (3) justified an award of damages under 42 U.S.C. § 1983.[1]

The state court conducted a non-jury trial on June 6, 2001, and entered findings of fact and conclusions of law on July 19, 2001. The court held that Hodges had established that it would suffer significant detriment under the current zoning but also held that Hodges had not met its burden of establishing that the existing zoning bore an insubstantial relationship to the public interest. The court decreed that the Property was constitutionally zoned and directed that judgment be entered for the defendants. On September 19, 2001, the Georgia Supreme Court denied Hodges's Application for Discretionary Review. On February 18, 2002, the Superior Court of Fulton County denied Hodges's Motion for Reconsideration. On February 26, 2002, Hodges filed the instant action in this court.

## II. LEGAL DISCUSSION

■ As an initial matter the court notes that even though Hodges has set forth three counts in its complaint, section 1983 does not itself create any substantive rights; it merely creates a remedy for deprivation of federal statutory and constitutional rights. *Almand v. DeKalb County*, 103 F.3d 1510 (11th Cir.1997). Hodges's complaint is more properly characterized as alleging claims under section 1983 for violations of the Takings Clause of the Fifth Amendment (as made applicable to the states by virtue of the Fourteenth Amendment) and the Due Process Clause of the Fourteenth Amendment.

In considering the merits of Hodges's complaint, the court is mindful of the Eleventh Circuit's caution that zoning decisions "as a general rule, will not usually be found by a federal court to implicate constitutional guarantees" and that a federal court has a "disinclination to sit as a zoning board of review." *Greenbriar Village, L.L.C. v. City of Mountain Brook, Alabama*, 345 F.3d 1258, 1262 (11th Cir.2003). Adding to this trepidation is the fact that Eleventh Circuit jurisprudence regarding zoning issues, as discussed below, has not been a model of clarity.

■ In alleging that it was denied due process, Hodges does not specify whether it was denied procedural or substantive due process. This failure, however, is irrelevant, since Hodges has failed to prove either. "Procedural due process requires notice and an opportunity to be heard before any governmental deprivation of a property interest." *Zipperer v. City of Fort Myers*, 41 F.3d 619, 623 (11th Cir. 1995). Even if Hodges had a constitutionally protected property right in having the Property rezoned (and the court seriously

---

1. The complaint filed in state court is virtually identical to the complaint filed in this court; the only significant difference is that no state constitutional violations are alleged in the federal complaint.

doubts that it did), Hodges was given notice and an opportunity to be heard before the defendants denied its rezoning request. Consequently, there was no violation of Hodges's procedural due process rights.

■ Likewise, there has been no substantive due process violation. "The substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty'." *McKinney v. Pate,* 20 F.3d 1550, 1556 (11th Cir.1994) (en banc). In *Greenbriar Village* the Eleventh Circuit clearly and unequivocally stated that zoning decisions cannot form the basis for a substantive due process claim, since property rights are created under state law, not the United States Constitution.[2] Relying on *Greenbriar Village,* this court holds that Hodges has failed to present a substantive due process claim.

■ With respect to Hodges's claim under the Takings Clause, this court concludes that such a claim is not ripe under Eleventh Circuit jurisprudence. "A Takings Claim does not become ripe unless the state provides no remedy to compensate the landowner for the taking. A property owner cannot claim a violation of the Clause unless the state provides the landowner no procedure (such as an action for inverse condemnation) for obtaining just compensation." *Bickerstaff Clay Products Co. v. Harris County, Georgia,* 89 F.3d 1481, 1490–91 (11th Cir.1996). In *Bickerstaff* the Eleventh Circuit specifically held that since Georgia courts recognize a claim for inverse condemnation the Takings Claim was not ripe. That same rationale is inapplicable in the case *sub judice.*

■ Although Hodges's state court complaint does not use the term "inverse condemnation," it appears that such a claim was made in that lawsuit. The state court complaint referred to Article I, Section III, Paragraph I of the Georgia Constitution, and the Georgia Court of Appeals has stated that this provision "provides property owners an adequate procedure for seeking just compensation in the form of an inverse condemnation action." *Benton v.*

---

2. In *Greenbriar Village,* the court scolded the attorneys for failing to realize that Eleventh Circuit cases they cited in support of their substantive due process claim were all pre-*McKinney v. Pate. See* footnote 4. However, the *Greenbriar Village* court itself failed to mention *Villas of Lake Jackson, Ltd. v. Leon County,* 121 F.3d 610 (11th Cir.1997). In a confusing discussion of "arbitrary and capricious due process," the court stated, "A landowner's vested rights created by state law may indeed constitute property subject to the arbitrary and capricious substantive due process protections under the federal Constitution...." 121 F.3d at 614. The *Lake Jackson* court, like the attorneys in *Greenbriar Village,* cited a pre-*McKinney v. Pate* case for this proposition and never mentioned *McKinney v. Pate.* Because of the holding in *McKinney v. Pate,* the precedential value of *Lake Jackson* is questionable. (Even applying that test, the *Lake Jackson* court found that the activities complained of were not arbitrary and capricious. The *Greenbriar Village* court in a dis-

cussion which it labeled as "merely academic" also found the acts complained of in that case not to be arbitrary and capricious.) In *Bickerstaff Clay Products Co. v. Harris County, Georgia,* 89 F.3d 1481 (11th Cir. 1996), the court, again ignoring *McKinney v. Pate,* stated that the substantive component of the Due Process Clause prohibits a governmental entity from applying a zoning classification that bears no relationship to the public health, safety, morals, or general welfare. However, in an interesting sleight-of-hand maneuver, the court went on to hold that the substantive due process claim was somehow subsumed in the Takings Clause claim. "Accordingly, [the plaintiff's] Takings Clause claim subsumes its substantive due process unless it can be said that the Framers of the Bill of Rights, in addition to providing the substantive rights contained in the Takings Clause, meant to replicate by implication those same rights in the Due Process Clause. We do not believe that such duplication was intended." 89 F.3d at 1490.

*Savannah Airport Commission,* 251 Ga. App. 759, 760, 555 S.E.2d 110 (2001). Hodges contends that the Georgia inverse condemnation procedure is not adequate *in this case* because the state court refused to award any damages for the taking. However, even if the state court did not act properly under Georgia's inverse condemnation procedure, this court is without authority to review that state court decision.

Even if the court assumes that Hodges's Takings Claim is ripe, the court concludes that Hodges has failed to prove that its property was "taken" within the meaning of this clause. "The clause applies in any case in which government action renders private property worthless." *Bickerstaff Clay Products,* 89 F.3d at 1489. "[W]hen the owner of real property has been called upon to sacrifice *all* economically beneficial uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking." *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1019, 112 S.Ct. 2886, 2895, 120 L.Ed.2d 798 (1992).

First of all, this court notes that the situation here is not the typical scenario, where the government adopts a zoning regulation and the property owner then challenges that new zoning as a taking. Instead, that portion of the Property at issue in this case which Hodges is prohibited from developing was already zoned with that restriction when Hodges purchased the property. Moreover, when viewed as a whole, the Property in question has not been zoned in such a way that "*all* economically beneficial uses" are prohibited. At trial there was testimony that houses could be built on a portion of the Property and that the portion which could not be developed would serve as a buffer for these houses. Hodges offered testimony that the Property would be worth $47,500 per acre without the restrictions complained of but only $2500 per acre with the restrictions. The fact that the value is substantially less does not mean that the Property is "worthless," as required by *Bickerstaff Clay Products.*

For the foregoing reasons, the clerk is directed to enter judgment for the defendants, dismissing the plaintiff's complaint with prejudice.