[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10719
Non-Argument Calendar
_____

D.C. Docket No. 4:16-cv-00344-HLM


ODEN, LLC,

                                            Plaintiff - Appellant,

versus

CITY OF ROME, GEORGIA,

                                            Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(August 29, 2017)

Before TJOFLAT, WILLIAM PRYOR, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Oden, LLC appeals the dismissal of its claims that the City of Rome violated its procedural due process rights as well as the Takings Clause of the Fifth Amendment by conducting demolition on its property without proper notice.  On appeal, Oden argues, among other things, that it properly alleged that the City was liable for violating its right to procedural due process and that it was not required to exhaust state remedies before bringing its Takings Clause claim.  After careful review, we affirm the district court's dismissal without prejudice of Oden's complaint.

## I.    BACKGROUND

Oden owns a lot containing a vacant building located at 300 Waddell Street in Rome, Georgia ("the property").  Seven months after Oden purchased the property, a City of Rome employee inspected it and found that it failed to comply with a number of municipal code requirements.  The City then filed an *in rem* action against the property seeking authorization to repair or demolish the vacant building and recorded a *lis pendens* notice of its complaint.  The complaint alleged that the repairs necessary to bring the building up to code could not been made at a reasonable cost relative to the property's value.

Both the City's complaint and the Georgia law under which the City sought relief recognized that the owner of the property was entitled to timely notice and service of the complaint.  The City's complaint represented that it sent, via

certified mail, a copy of the complaint to the property and to Oden at an address in Salt Lake City, Utah. The Salt Lake City address, however, was no longer in service. Notwithstanding that fact, the City neither posted the complaint on the property nor sent the complaint to Oden's registered agent in Georgia. Even after the City's initial mailings were returned as undeliverable, it continued to mail subsequent notices to the defunct Salt Lake City address. As a result, the Municipal Court of Rome conducted a hearing in the case and issued a final order of condemnation against the property without Oden receiving notice or making an appearance.

Although Oden never received notice of the Municipal Court's final order, it learned of the complaint approximately three months after the final order was issued. Oden immediately sent a contractor to the property to secure and clean it up. Days later, however, the City began to demolish the property, destroying exterior stairs, balconies, and walkways and causing other structural damage to the building and its electrical and plumbing systems. After this initial round of demolition, the City agreed to halt further demolition as long as Oden boarded up and continued to clean up the property.

Oden then filed suit against the City under 42 U.S.C § 1983, alleging that the City violated its Fourteenth Amendment procedural due process rights by denying it notice and an opportunity to be heard before destroying its property and effected

an unconstitutional taking by seizing its property without just compensation. Oden also pled two state law claims against the City. On the City's motion, the district court dismissed Oden's complaint without prejudice. Oden now appeals the dismissal of its procedural due process and takings claims.[1]

## II.    STANDARD OF REVIEW

We review a district court's decision granting a motion to dismiss *de novo*. *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1357 (11th Cir. 2016). In doing so, we accept the well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012).

## III.    DISCUSSION

### A.    Procedural Due Process

"[A]t a minimum, the Due Process Clause requires notice and the opportunity to be heard incident to the deprivation of life, liberty or property at the hands of the government." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). To allege a procedural due process violation under § 1983, a plaintiff must show "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process." *Id.* Constitutionally adequate process requires the government to provide the aggrieved party notice

---

[1] Oden does not appeal the district court's dismissal of its state law claims.

4

and an opportunity to be heard "at a meaningful time and in a meaningful manner." *Id.*

Procedural due process claims brought under § 1983 are subject to limitations on municipal liability. *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016). Municipal liability under § 1983 obtains only where "the municipality has officially sanctioned or ordered" the constitutional violation at issue. *Id.* (internal quotation marks omitted). A municipality may be liable for an official policy enacted by its legislative body, or where its policymakers have acquiesced in a longstanding standard operating procedure, or where an entity with "final policymaking authority" ratifies the unconstitutional decision of a subordinate. *Id.* (internal quotation marks omitted). Although a plaintiff need not identify a final policymaker at the pleading stage, a plaintiff must "allege a policy, practice, or custom of the [municipality] which caused" the constitutional violation. *Id.* at 1280.

Here, the district court dismissed Oden's procedural due process claim for two independent reasons. The court concluded that Oden (1) failed to identify any City "policy, practice, or custom" that caused its alleged deprivation, and (2) received constitutionally adequate process because it had actual knowledge of the City's complaint before the demolition occurred. We agree with the district court

5

that dismissal without prejudice was warranted because Oden insufficiently pled municipal liability.[2]

Oden alleges only that the City sent a copy of its complaint—and subsequent notices—to the property and to a defunct address, depriving Oden of notice of the City's condemnation action. Oden does not allege that the City's failure to notify it was part of a "policy, practice, or custom" of the City, which is required for municipal liability to obtain under § 1983. *Hoefling*, 811 F.3d at 1279. Instead, Oden contends that it was not required to show a "policy, practice, or custom" of the City because the City itself carried out the demolition. According to Oden, the "policy, practice, or custom" limitation on municipal liability applies only where the plaintiff pursues a *respondeat superior* theory of liability, seeking to hold a municipality responsible for the actions of its employees or agents. Oden maintains that it is not pursuing such a theory because the City itself conducted the demolition. But the City, like all municipalities, is an intangible fiction; *every* action "the City" takes is, in reality, an action taken by its employees or agents. The framework described above and initially developed in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), delineates the circumstances under which a

---

[2] We have concerns with the district court's conclusions that Oden received constitutionally adequate process because it was aware of the City's complaint "days" before the demolition occurred and because Oden hypothetically could have appealed the final condemnation order or asked the trial court to reconsider. We need not determine whether the district court erred in so concluding, however, as the court properly dismissed Oden's procedural due process claim for failure to adequately plead municipal liability.

municipality can be held liable for those actions.  It is, therefore, circular to say that the *Monell* framework does not apply because the City directly took a particular action; Oden's position merely begs the question of whose conduct can be imputed to the City.

Indeed, Oden's argument is undermined by the very cases it cites, each of which reaffirms the universal applicability of the "policy, practice, or custom" requirement in municipal liability cases.  *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) ("We hold that municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."); *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005) ("[T]he plaintiff has the burden to show that a deprivation of constitutional rights occurred as a result of an official government policy or custom."); *McKusick v. City of Melbourne, Fla.*, 96 F.3d 478, 483 (11th Cir. 1996) ("The presence of a municipal policy or custom is essential" for municipal liability).  To Oden's credit, however, these cases recognize that an action taken by a government official can constitute an official "policy" giving rise to municipal liability if the official has "final policymaking authority" for the municipality.  *See, e.g., Pembaur*, 475 U.S. at 483.  Reframed properly, then, Oden's argument is that its procedural due process rights were

violated as the result of a final policymaker's decision to conduct demolition on the property.

The problem with Oden's argument is that the ultimate demolition is not the relevant act for assessing municipal liability. Although no alleged deprivation of Oden's rights could have occurred until the City obtained a final judgment against the property, the crux of Oden's procedural due process claim is that it did not receive adequate notice of the condemnation proceedings. The relevant question, then, for assessing municipal liability is whether a municipal "policy, practice, or custom" resulted in Oden's lack of notice. For example, in *Pembaur*, the court considered municipal liability in the context of an unlawful search resulting from a county prosecutor's instructions. 475 U.S. at 473. In holding that the municipality could be held liable, the Court assessed whether the county prosecutor was a final policymaker, even though no deprivation of rights occurred until law enforcement officers actually conducted the search. The Court focused on the prosecutor's instructions because they "directly caused" the constitutional violation. *Id.* at 483-85. Here, then, the relevant act for assessing municipal liability is not the ultimate demolition of the property, but is instead the decision to mail notice of the condemnation action to the incorrect address, which directly resulted in the alleged deprivation of property without notice.

As pled in the complaint, that was an *ad hoc* decision made by an unidentified city employee or agent insufficient to give rise to municipal liability. While Oden needed not identify a final policymaker in its complaint, it was required to plausibly allege "a policy, practice, or custom *of the City* which caused the" constitutional violation. *Hoefling*, 811 F.3d at 1280 (emphasis added). We have held that this standard can be met by alleging a pattern of behavior that permits the inference of an official policy, *id.* at 1280-81, but not by pleading "a single incident" involving government employees, *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1329 (11th Cir. 2015). Here, Oden has alleged only a single error made by an unidentified City employee or agent. The district court therefore properly dismissed Oden's procedural due process claim without prejudice.

## B.    Takings Clause Claim

The Fifth Amendment's Takings Clause prohibits governments from seizing private property for public use without providing the property owner just compensation. The Takings Clause requires payment of just compensation, without qualification, where a regulation "compel[s] the property owner to suffer a physical invasion of his property," or "denies all economically beneficial or productive use of land." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992) (internal quotation marks omitted). Here, Oden alleges that the City

9

violated the Takings Clause by conducting demolition on the property without sufficient justification and without compensating Oden.

Takings Clause claims are subject to an exhaustion requirement. "A property owner cannot claim a violation of the [Takings] Clause unless the state provides the landowner no procedure (such as an action for inverse condemnation) for obtaining just compensation." *Bickerstaff Clay Prods. Co. v. Harris Cty.*, 89 F.3d 1481, 1491 (11th Cir. 1996). A takings claim is ripe, however, if the plaintiff adequately pleads that although a state remedial process exists, "due to state court interpretation, the process is inadequate." *Agripost, Inc. v. Miami-Dade Cty., ex rel. Manager*, 195 F.3d 1225, 1231 (11th Cir. 1999).

The district court dismissed Oden's takings claims because Oden failed to exhaust state remedies, namely, an action for inverse condemnation under Georgia law, and alternatively because Oden's complaint admitted that the state was using its police power—which is not subject to the Takings Clause—to conduct the demolition. Because Oden was required to and failed to exhaust state remedies, we affirm the district court's dismissal of Oden's takings claims.

Oden recognizes that Georgia provides a cause of action for inverse condemnation, but argues that such a remedy is unavailable to it under the district court's interpretation of Georgia law. According to Oden, the district court concluded that Georgia law does not permit recovery under an inverse

10

condemnation theory where the municipality that effected the condemnation *merely asserts* that it did so pursuant to its police power to abate a nuisance.  As such, Oden maintains that because the City's putative reason for the demolition was nuisance abatement, Oden has no inverse condemnation remedy.  But Oden *disagrees* with that interpretation of state law, arguing that there are objective limitations on a municipality's exercise of the police power.  We agree with Oden's interpretation of Georgia law and therefore conclude it has an adequate state remedy that it failed to exhaust, as it could demonstrate in a state inverse condemnation action that the demolition exceeded the City's police powers.

Georgia law requires that compensation be paid when property is taken for a public purpose using eminent domain, but not when property is seized using the state's police power.  *Pope v. City of Atlanta*, 249 S.E.2d 16, 19 (Ga. 1978).  "The distinction between use of eminent domain and use of the police power is that the former involves the taking of property because it is needed for public use while the latter involves the regulation of the property to prevent its use in a manner detrimental to the public interest."  *Id.*  Valid uses of the police power include "abatement of nuisances," "health regulations," and enforcement of "building standards."  *Id.*; *see also* O.C.G.A. § 41-2-7(a) (permitting municipalities to "repair, close, or demolish" buildings or structures "which constitute a hazard to the health, safety, and welfare of the people").  The exercise of police power is

subject to a balancing test that weighs "the state's interest in regulation against the landowner's interest in the unfettered use of his property." *Pope*, 249 S.E.2d at 19. Under this balancing test, a seizure of property is concomitant to a legitimate exercise of the police power only "if it bears a substantial relation to the public health, safety, morality or general welfare." *Id.* (internal quotation marks omitted). The test also requires an assessment of whether "the government has . . . exceeded its police power, for excessive regulation of property violates . . . due process . . . and the prohibition against taking property for public use without compensation." *Id.*[3]

Here, Oden alleged that it was "unreasonably deprived" of property "through the unnecessary destruction of portions of the [property] that were sound and did not pose a general nuisance." Compl., Doc. 1 at 15.[4] In essence, Oden maintains that the city exceeded its authority under the police power by conducting demolition that had no "substantial relation to the public health, safety, morality, or general welfare." *Pope*, 249 S.E.2d at 19 (internal quotation marks omitted). This

---

[3] Given this framework, we are concerned about the district court's alternative holding that Oden did not state a takings claim because the complaint recognized that the city putatively used its police power to conduct the demolition. This analysis does not seem to contemplate the possibility—suggested by Oden's complaint—that the city effected a taking without compensation by exceeding either state law limitations on the police power, *see Pope*, 249 S.E.2d at 19, or the limitations imposed on state police powers by the Fifth Amendment, *see Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 145-46, 149 (1978). Nonetheless, we need not decide whether the district court erred in reaching its alternative holding because the court properly dismissed Oden's Takings Clause claim for failure to exhaust state remedies.

[4] Citations to "Doc. __" refer to numbered docket entries in the district court record in this case.

12

type of claim—which asserts that a governmental action against private property was in reality a taking without compensation—is cognizable as an inverse condemnation under Georgia law. *See Shealy v. Unified Gov't of Athens-Clarke Cty.*, 537 S.E.2d 105, 108 (Ga. Ct. App. 2000) ("An inverse condemnation claim arises when [a] governmental entity creates a condition on private property, such as a nuisance, that amounts to a taking without compensation." (internal quotation marks and alteration omitted)). Oden therefore has an adequate state court remedy, which it was required to exhaust before filing its Takings Clause claim in federal court. *Bickerstaff*, 89 F.3d at 1491. The district court properly dismissed this claim without prejudice.

## IV.    CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**