RANCH HOUSE, INC., etc., Plaintiff-Appellant,

v.

Larry AMERSON, Sheriff of Calhoun County, and the Calhoun County Commission, etc., Defendants-Appellees.

No. 98-6857.

United States Court of Appeals,

Eleventh Circuit.

Jan. 17, 2001.

Appeal from the United States District Court for the Northern District of Alabama.(No. 98-01638-CV-TMP-E), Robert B. Propst, Judge.

Before ANDERSON, Chief Judge, and MARCUS and KRAVITCH, Circuit Judges.

MARCUS, Circuit Judge:

Plaintiff Ranch House, Inc. ("Ranch House") appeals the district court's order dismissing its complaint and finding after a bench trial that two recent Alabama statutes regulating nude entertainment pass First Amendment muster. One statute, Alabama Code § 13A-12-200.11, broadly prohibits any business from allowing nudity to be shown for entertainment purposes; the other statute, Alabama Code § 13A-12-200.5(4), prohibits operation of an adult-oriented business within 1,000 feet of various buildings such as churches or schools. Ranch House contends that these statutes proscribe too much protected expression, and that the Defendants should be prohibited from enforcing them. Although we agree that on this record there may be real questions about the constitutionality of these statutes, we conclude that the wisest course is to remand this case to permit further argument and development of the record on several critical issues, including Defendants' claim that § 200.11 is intended to combat the "secondary effects" of nude entertainment. We therefore vacate the district court's orders and remand for further proceedings consistent with this opinion. We also continue this Court's existing injunction prohibiting enforcement of §§ 200.11 and 200.5(4) with respect to Ranch House's existing businesses.

I.

The parties stipulated to the following facts before the district court. *See Ranch House v. Amerson,* 22 F.Supp.2d 1296, 1297 (N.D.Ala.1998). Ranch House is an Alabama corporation doing business as the Platinum Club ("Club") and the Platinum Sports Bar ("Bar"). The Club offers topless and nude female dancing, and is not licensed to sell or provide alcohol in connection with the dancing. The Bar is adjacent to the Club and is licensed to sell beer and wine. At no time have Ranch House or its employees been

arrested or prosecuted for obscenity. Both businesses are located in an unincorporated area of Calhoun County, Alabama. The Defendants, the Calhoun County Commission and Larry Amerson, Sheriff of Calhoun County, will attempt to enforce the statutes at issue with respect to Ranch House's businesses if those provisions are upheld in this case.

The two statutes at issue are recent amendments to the Alabama Anti-Obscenity Enforcement Act, Ala.Code § 13A-12-200.1, *et seq.* (the "Act"). Both provisions took effect, along with other amendments, on July 1, 1998. *See* 1998 Ala. Acts 98-467 (Apr. 29, 1998), § 9. Both provisions are entirely new additions to the Act.

Section 200.11 provides in relevant part:

It shall be unlawful for any business establishment or any private club to show or allow to be shown for entertainment purposes the human male or female genitals, pubic area, or buttocks with less than a fully opaque covering, or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple, or the depiction of covered male genitals in a discernibly turgid state. A violation of this section shall be a Class C felony.

Ala.Code § 13A-12-200.11. The term "business establishment" is not defined in § 200.11 or anywhere else in the Act as amended. Nor does § 200.11 or the amended Act define "for entertainment purposes." It seems possible, therefore, that the statute does not target only nude dancing venues, but also on its face extends to non-adult oriented business establishments such as for-profit theaters where works of "serious" artistic expression might be performed as entertainment. Ranch House, for its part, does not dispute that its activities come within the statute's prohibition.

The other provision challenged by Ranch House, § 200.5(4), provides in relevant part:

It shall be unlawful for any person to operate an adult bookstore, adult movie house, adult video store, or other form of adult-only enterprise within 1,000 feet of a church, place of worship, church bookstore, public park, public housing project, daycare center, public or private school, college, recreation center, skating rink, video arcade, public swimming pool, private residence, or any other place frequented by minors. Any person who violates this subsection shall be guilty of a misdemeanor and, upon conviction, shall be punished by a fine of not more than [$10,000] and may be imprisoned in the county jail for not more than one year.

Ala.Code § 13A-12-200.5(4). The applicability of this statute to Ranch House's activities is undisputed. Ranch House concedes that it is an "adult-oriented enterprise" within the meaning of the statute, and the parties have stipulated that an occupied, single-residence structure is located within 1,000 feet of Ranch House's businesses. The parties have also stipulated that this statute, if enforced, would not totally deprive Ranch House of economic uses of its businesses. *See Ranch House,* 22 F.Supp.2d at 1297 ("[The Act] does not operate as a 'total taking' of the Plaintiff's property, and there are remaining economic uses to which the

Plaintiff might subject its property presently housing the Platinum Club.").

II.

Ranch House filed its complaint on June 25, 1998, prior to the amended Act's effective date, alleging that §§ 200.11 and 200.5(4) are unconstitutional under the First Amendment to the United States Constitution.[1] That same day it moved for a preliminary injunction against enforcement of the statutes. The district court, with the parties' agreement, consolidated the preliminary injunction hearing with a trial on the merits. After the parties stipulated to certain relevant facts, the district court conducted a bench trial that consisted entirely of oral argument by counsel. The court did not engage in any further factfinding on its own.

In an opinion dated September 30, 1998, the district court upheld the constitutionality of both statutes and, in an accompanying order, dismissed Ranch House's complaint. With respect to § 200.11, the court first quoted at length from the United States Supreme Court's plurality opinion in *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991), a case which involved a ban on public nudity generally. The district court adopted the reasoning of the *Barnes* plurality, and thereby essentially ruled that § 200.11 is a content-neutral restriction intended not to suppress the message conveyed by nude dancing, but rather to combat the "secondary effects" of that expression. Accordingly, the court applied the four-factor intermediate scrutiny analysis set forth in *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), rather than strict scrutiny as Ranch House proposed. The district court expressly addressed only one of the *O'Brien* factors—whether "the incidental restriction on alleged First Amendment freedoms [was] no greater than is essential to the furtherance of th[e asserted governmental] interest," *id.* at 376-377, 88 S.Ct. at 1678-79—and analyzed that factor solely with regard to the "extent of the opaque cover of body parts which the statute mandates." 22 F.Supp.2d at 1302. The court ultimately concluded that § 200.11 does not unreasonably diminish the expressive content of nude dancing, and therefore survives intermediate scrutiny. With respect to § 200.5(4), the district court's analysis consisted almost entirely of lengthy selective quotations from *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). The court concluded that § 200.5(4) is facially valid and not overbroad.

After the district court ruled, Ranch House moved for an injunction pending appeal to avoid

---

[1]Ranch House also challenged a third amendment to the Act, now codified as Ala.Code § 13A-12-200.12, but this claim was abandoned at trial on grounds of ripeness, and is not pursued on appeal.

enforcement of these statutes. The district court granted that motion, and this Court subsequently granted Ranch House's motion to continue the injunction pending resolution of this appeal.

This appeal was first argued before a different panel of this Court in February 1999. That panel deferred any decision until after the Supreme Court issued its opinion in a case involving a similar but broader restriction on public nudity. *See City of Erie v. Pap's A.M.,* 529 U.S. 277, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000). The parties were then directed to submit supplemental briefs regarding the Supreme Court's opinion. The original panel was unable to reach a majority regarding disposition of the appeal. Accordingly, the matter was re-assigned to the present panel. The injunction entered by this Court to preserve the status quo has remained in place to this day.

### III.

The standard of review in this case is undisputed. The constitutionality of a statute is a question of law subject to de novo review. *See, e.g., Williams v. Pryor,* 229 F.3d 1331, 1334 (11th Cir.2000); *United States v. Harden,* 37 F.3d 595, 602 (11th Cir.1994).

### IV.

We first address the constitutionality of § 200.11's ban on the display of nudity by a "business establishment ... for entertainment purposes."[2] Ranch House contends that the statute must, but cannot, survive strict scrutiny because it amounts to a content-based regulation of protected expression.[3] Ranch House also contends that the statute fails even under intermediate scrutiny because it is plainly overbroad. Defendants respond that the statute is content-neutral because it is not intended to suppress expression, but rather to combat secondary effects associated with nude dancing. Defendants further respond that because the statute is content-neutral, the more relaxed standard of *O'Brien* applies, and the statute is permissible under that standard. Defendants make no argument that § 200.11 could withstand strict scrutiny.

---

[2] The district court described Ranch House's challenge to §§ 200.11 and 200.5(4) as solely an attack on the statutes' facial validity. *See Ranch House,* 22 F.Supp.2d at 1298. It appears that Ranch House may have cast its arguments before the district court in terms of a facial challenge. Some of Ranch House's present arguments, however, suggest that it also attacks at least one of these statutes (§ 200.5(4)) as applied. *See also* Compl., at 1 (seeking relief "based on the threatened enforcement of facially unconstitutional statutes ... as applicable to Plaintiff's business"). Because these as-applied arguments may have merit, and in order to ensure that all of Ranch House's constitutional objections are resolved in this litigation, we do not preclude Ranch House from pursuing, on remand, an as-applied challenge to either statute.

[3] The parties correctly agree that the Supreme Court has accorded non-obscene nude dancing, such as that performed at Ranch House, some—albeit limited—First Amendment protection. *See, e.g., Pap's,* 120 S.Ct. at 1391 (citing *Barnes,* 501 U.S. at 565-66, 111 S.Ct. at 2460).

As we often have remarked, "[w]hether a statute is constitutional is determined in large part by the level of scrutiny applied by the courts." *Williams,* 229 F.3d at 1334. The Supreme Court in *Pap's* recently addressed the proper framework for evaluating what level of scrutiny should be applied to statutes that restrict nude dancing. Although no opinion in that case was joined by more than four Justices, a majority of the Court basically agreed on how these kinds of statutes should be analyzed:

> [First, a court] must decide "whether the State's regulation is related to the suppression of expression." If the governmental purpose in enacting the regulation is unrelated to the suppression of expression, then the regulation need only satisfy the "less stringent" standard of [*O'Brien*] for evaluating restrictions on symbolic speech. If the government interest is related to the content of the expression, however, then the regulation falls outside the scope of the *O'Brien* test and must be justified under a more demanding standard.

*Pap's,* 120 S.Ct. at 1391 (plurality op.) (citations omitted); *see also id.* at 1402 (Souter, J., concurring in part and dissenting in part) (stating agreement with the "analytical approach that the plurality employs in deciding this case"). The defining question, therefore, is whether § 200.11 is a content-based regulation of protected expression.

The Supreme Court recently reiterated that the hallmark of a content-based regulation is the government's purpose to suppress the message conveyed by the speech or expression at issue. *See Hill v. Colorado,* 530 U.S. 703, 120 S.Ct. 2480, 2491, 147 L.Ed.2d 597 (2000) (" 'The principal inquiry in determining content neutrality, in speech cases generally ... is whether the government has adopted a regulation of speech because of disagreement with the message it conveys.... As we have repeatedly explained, government regulation of expressive activity is "content-neutral" if it is justified without reference to the content of regulated speech'.") (quoting *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 2754, 105 L.Ed.2d 661 (1989)). Thus, if a regulation of expression may be justified without reference to the contents of the expression, the regulation is considered content-neutral. This point is critical, because the fact that a statute *refers* to the content of expression does not necessarily make it content-based if it was enacted for a valid purpose *other* than suppressing the expression due to a disagreement with the message conveyed or a concern over the message's direct effect on those who are exposed to it.

Section 200.11 does distinguish among the forms of expression being proscribed—it is not all nudity, but rather only nudity for entertainment purposes, that the Alabama Legislature has sought to ban. Thus, in a narrow sense, § 200.11 is not "neutral" as to content because it explicitly permits certain types of nude expression while restricting other types of nude expression based entirely on whether the expression is for entertainment purposes. Ranch House emphasizes this fact heavily. As noted above, however, both the

Supreme Court and this Court have framed the inquiry more broadly, by focusing on the purpose of the legislature in enacting the challenged law.

The most relevant line of cases illustrating this point—and the line of cases relied upon by Defendants here—involves the so-called secondary effects doctrine, as first set forth by the Supreme Court in *City of Renton v. Playtime Theatres*. The ordinance at issue in *Renton* prohibited any "adult motion picture theater" from locating "within 1,000 feet of any residential zone, single- or multiple-family dwelling, church, or park, and within one mile of any school." The term "adult motion picture theater" was defined as "[a]n enclosed building used for presenting motion picture films ... or any other such visual media, distinguished or characteri[zed] by an emphasis on matter depicting, describing or relating to 'specified sexual activities' or 'specified anatomical areas' ... for observation by patrons therein." The plaintiff argued that the ordinance was a content-based regulation of speech that should be given strict scrutiny rather than analyzed under the less exacting intermediate scrutiny applied to content-neutral "time, place, and manner" laws. The Court disagreed, and in the process illustrated that a statute is not necessarily content-based simply because on its face it distinguishes among types of speech based on their contents:

> This Court has long held that regulations enacted for the purpose of restraining speech on the basis of its content presumptively violate the First Amendment. On the other hand, so-called "content-neutral" time, place, and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication.
>
> At first glance, the Renton ordinance ... does not appear to fit neatly into either the "content-based" or the "content-neutral" category. To be sure, the ordinance treats theaters that specialize in adult films differently from other kinds of theaters. Nevertheless, as the District Court concluded, the Renton ordinance is aimed not at the content of the films shown at "adult motion picture theatres," but rather at the secondary effects of such theaters on the surrounding community. The District Court found that the City Council's "predominate concerns" were with the secondary effects of adult theaters, and not with the content of adult films themselves.... The ordinance by its terms is designed to prevent crime, protect the city's retail trade, maintain property values, and generally "protec[t] and preserv[e] the quality of [the city's] neighborhoods, commercial districts, and the quality of urban life," not to suppress the expression of unpopular views.... In short, the Renton ordinance is completely consistent with our definition of "content-neutral" speech regulations as those that "are justified without reference to the content of the regulated speech." The ordinance does not contravene the fundamental principle that underlies our concern about "content-based" speech regulations: that "government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views." ...

475 U.S. at 46-48, 106 S.Ct. at 928-29 (citations omitted).

In *Renton,* the Court recognized that a statute which on its face distinguishes based on content is not necessarily content-based for purposes of First Amendment analysis. The ultimate question is whether the legislature's purpose is to suppress the content of the proscribed message because of a disagreement with that

message or concern over the direct effect of that message on its observers. The secondary effects doctrine conceived by the Supreme Court is used to determine *whether* a statute is content-based, by looking for a legislative purpose independent of the legislature's hostility to the underlying message. Asserting, as Ranch House does, that secondary effects analysis "does not apply" to a content-based statute therefore misunderstands the proper inquiry.

This Circuit recently illustrated how the secondary effects doctrine works and, just as importantly, why a statute that on its face refers to content is not necessarily content-based and thereby subject to strict scrutiny. In *Sammy's of Mobile, Ltd. v. City of Mobile,* 140 F.3d 993 (11th Cir.1998), *cert. denied,* --- U.S. ----, 120 S.Ct. 1553, 146 L.Ed.2d 459 (2000), this Court upheld against First Amendment attack a city ordinance making it unlawful for any establishment "licensed to sell [liquor] under the laws of the State of Alabama, knowingly to exhibit ... or be connected with, any motion picture, show, performance, or other presentation upon the licensed premises, which, in whole or in part, depicts nudity or sexual conduct or any simulation thereof." The preamble to the ordinance declared that the goal of the statute was to avoid the "undesirable behavior" and "disturbances associated with mixing alcohol and nude dancing...." The plaintiff argued that the ordinance was content-based because it referred only to a particular type of expression: adult-oriented nude entertainment. This Court rejected that argument, explaining that "[t]he Supreme Court ... does not equate reference to content with suppression of content." *Id.* at 998 (adding that the Supreme Court applies an "intermediate level of scrutiny to ordinances which distinguish between nude and clothed entertainment, but which are aimed only at the secondary effects of nude entertainment") (citing, inter alia, *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 71 n. 34, 96 S.Ct. 2440, 2453 n. 34, 49 L.Ed.2d 310 (1976) ("[i]t is [the] secondary effect [of crime and urban deterioration] which these zoning ordinances attempt to avoid, not the dissemination of 'offensive speech' ")).

Simply looking at the language of the statutes at issue in cases like *Renton* and *Sammy's* demonstrates why § 200.11 is not content-based solely because that provision distinguishes between nudity for entertainment purposes and nudity generally. Contrary to Ranch House's argument, while the fact that a statute expressly targets a particular form of nudity is certainly relevant in determining whether the statute's purpose is to suppress that particular form of expression, *see Pap's,* 120 S.Ct. at 1391, it is *not* necessarily dispositive of the inquiry. To answer the question fully, we need to explore other indications of the legislature's purpose in enacting the challenged statute.

It is at this stage of the analysis that Ranch House's argument may become more persuasive. Invoking *Renton,* the Defendants claim that § 200.11 was passed not for the purpose of suppressing the message associated with nude dancing, but rather to prevent the secondary effects of nude entertainment venues on the surrounding community. In determining whether the purpose of a law is to suppress protected speech, a court may examine a wide variety of materials, including the text of the statute, any preamble or express legislative findings associated with it, legislative history, and studies and information of which legislators were clearly aware. *See, e.g., Colacurcio v. City of Kent,* 163 F.3d 545, 552 (9th Cir.1998) ("We will look to the full record to determine whether evidence indicates that the purpose of the ordinance is to suppress speech or ameliorate secondary effects. In so doing, we will rely on all 'objective indicators of intent, including the face of the statute, the effect of the statute, comparison to prior law, facts surrounding enactment, the stated purpose, and the record of proceedings.' " (citation omitted)), *cert. denied,* --- U.S. ----, 120 S.Ct. 1553, 146 L.Ed.2d 459 (2000).

Our task, therefore, is to examine the record and determine whether the Alabama Legislature's purpose in restricting the display of nudity for entertainment purposes was borne of disagreement with the message conveyed by nude dancing, or rather a desire to ameliorate the perceived negative effects of nude dancing venues on the safety, health, and welfare of the surrounding community. There is little question that, if the statute were enacted for the latter purpose, it would be deemed content-neutral and only intermediate scrutiny would apply. *See Pap's,* 120 S.Ct. at 1394 (statute regulating public nudity properly evaluated as content-neutral because the legislature's "interest in combating the secondary effects associated with [nude dancing] clubs is unrelated to the suppression of the erotic message conveyed by nude dancing"). The difficulty, however, is that Defendants' claim regarding the Alabama Legislature's purpose is not evident on this limited record.

Rather than bolstering a secondary effects argument, as Defendants contend, the materials available to us, at least at first blush, may tend to suggest that the Legislature's purpose was indeed to suppress nude dancing based on opposition to the message which that particular form of expression conveys. The relevant text of § 200.11, as noted above, expressly targets nude *entertainment* as opposed to other displays of nude expression. Moreover, the statute expressly prohibits not only nudity at topless bars and other adult-oriented establishments, but also, it seems, nudity displayed at theaters and other "serious" for-profit entertainment venues not ordinarily linked to negative secondary effects.

Although the introductory section of the bill that added § 200.11 to the Act records a concern with "obscene nuisances," *see* 1998 Ala. Acts 98-467, neither the specific language adding § 200.11 nor the bill itself refers to the kind of non-obscene nude dancing offered by Ranch House, or suggests that venues providing such expression constitute a public nuisance. In addition, although the amended Act contains a zoning clause (§ 200.5(4)) limiting where "adult-oriented enterprise[s]" may operate, the fact that such a clause is commonly justified by secondary effects does not establish that the Legislature enacted § 200.11 to combat secondary effects. Indeed, the inclusion of § 200.11 as a separate provision in the same bill as § 200.5(4) arguably suggests that the Legislature intended § 200.11 to accomplish something more than preventing secondary effects associated with nude dancing. The text of the statute, in sum, may not at first blush demonstrate a legislative purpose to combat secondary effects.

Similarly, the express legislative findings in the bill adding § 200.11, rather than supporting a secondary effects argument, also may tend to suggest that the Alabama Legislature's purpose was to suppress the message conveyed by nude dancing because of a disagreement with that message. The relevant legislative findings stated in the bill are as follows:

> The Legislature of Alabama finds and declares:
>
> (1) That in order to protect children from exposure to obscenity, prevent assaults on the sensibilities of unwilling adults by the purveyor of obscene material, and suppress the proliferation of "adult-only video stores," "adult bookstores," "adult movie houses," and "adult-only entertainment," the sale and dissemination of obscene material should be regulated without impinging on the First Amendment rights of free speech by erecting barriers to the open display of erotic and lascivious material.
>
> (2) That the premises in which a violation of [the Act] occurs should be declared a public nuisance.

1998 Ala. Acts 98-467, § 1. The first legislative finding, by its terms, applies only to displays of obscenity, not to displays of non-obscene nude entertainment. Moreover, it may be read as focusing on the content of the proscribed message and the perceived effect of that message on listeners. As such, it would tend to undermine rather than support Defendants' secondary effects argument. *See, e.g., Boos v. Barry,* 485 U.S. 312, 321, 108 S.Ct. 1157, 1163, 99 L.Ed.2d 333 (1988) ("Regulations that focus on the direct impact of speech on its audience present a different situation. Listeners' reactions to speech are not the type of 'secondary effects' we referred to in *Renton.*"). The second legislative finding, meanwhile, adds little to the analysis. It seems to declare that establishments such as the Club are public nuisances. It does so, however, only because those establishments permit a form of expression proscribed in different contexts by different

provisions of the Act, *not* because of the negative effects of that expression on the surrounding community.

Defendants have not yet countered these points. Nor have they offered any legislative history or other record evidence tending to support the claim that the Alabama Legislature enacted § 200.11 to ameliorate secondary effects associated with nude dancing. Defendants simply take the position that they are not required to make any showing regarding the Alabama Legislature's purpose in enacting § 200.11. In essence, they say, we should simply assume that the Legislature's purpose was to combat the negative impact on health, safety, and welfare allegedly caused by venues that provide nude dancing.

That argument goes too far, however. We are aware of no case where a court has adopted that proposition or sustained a secondary effects argument in the absence of *any* indication that the relevant legislative body intended to ameliorate such effects.[4] Secondary effects doctrine is an exception to the general rule that a statute which on its face distinguishes among particular types of speech or expression by content is subject to the strictest scrutiny. *See Artistic Entertainment, Inc. v. City of Warner Robins,* 223 F.3d 1306, 1308 (11th Cir.2000) ("regulations that restrict protected expression based on its content are subject

---

[4]*Compare, e.g., Pap's,* 120 S.Ct. at 1392 ("In the preamble to the ordinance, the city council stated that it was adopting the regulation 'for the purpose of limiting a recent increase in nude live entertainment within the City, which activity adversely impacts and threatens to impact on the public health, safety and welfare by providing an atmosphere conducive to violence, sexual harassment, public intoxication, prostitution, the spread of sexually transmitted diseases and other deleterious effects.' The Pennsylvania Supreme Court construed this language to mean that one purpose of the ordinance was 'to combat negative secondary effects.' "); *Renton,* 475 U.S. at 44, 106 S.Ct. at 927 (ordinance at issue specifically stated that proscribed activities "would have a severe impact upon surrounding businesses and residences"); *Wise Enters., Inc. v. Unified Govt. of Athens-Clarke County,* 217 F.3d 1360, 1363 (11th Cir.2000) (preamble expressly stated concern over secondary effects); *Sammy's,* 140 F.3d at 997 (emphasizing that "[t]he preamble to the ordinance finds that nudity and sexually explicit entertainment coupled with alcohol in public places 'encourages undesirable behavior and is not in the interest of public health, safety, and welfare,' " and adding that the "statute's purpose of protecting societal order and morality is clear from its text and history"); *International Eateries of America, Inc. v. Broward County,* 941 F.2d 1157, 1162 (11th Cir.1991) ("the ordinances [ ] specifically state that certain businesses have a 'deleterious effect' on the residential and business areas around them and that the purpose of the ordinance is to 'ensure that these adverse effects will not contribute to the blighting and downgrading of the surrounding neighborhood.' ").

We note that, in a concurring opinion in *Barnes,* Justice Souter found that secondary effects were a substantial government interest supporting the challenged statute despite the fact that the statute was silent as to its purpose. 501 U.S. at 582, 111 S.Ct. at 2469 ("It is, of course, true that this justification has not been articulated by Indiana's legislature or by its courts."). In *Pap's,* however, Justice Souter again wrote a separate concurring opinion, only this time to retreat from his concurring opinion in *Barnes.* 120 S.Ct. at 1402-06. We do not, therefore, read Justice Souter's concurring opinion in *Barnes* as supporting Ranch House's argument in this case. In any event, in *International Eateries,* we explained that "[b]ecause Justice Souter wrote only for himself in *Barnes,* we continue to follow the *Renton* Court's approach of gleaning the government interest at stake from the ordinance itself rather than implying one where none is evident in the ordinance." 941 F.2d at 1162 n. 3.

to strict scrutiny"); *see also R.A.V. v. City of St. Paul,* 505 U.S. 377, 382, 112 S.Ct. 2538, 2542, 120 L.Ed.2d 305 (1992) ("The First Amendment generally prevents government from proscribing speech, or even expressive conduct, because of disapproval of the ideas expressed."(citations omitted)). Adopting Defendants' broad argument would permit the exception to swallow the rule, and would permit the proscription of protected speech far in excess of what the First Amendment allows. Additionally, Defendants' argument renders meaningless the rule that "[w]hen the Government restricts speech the Government bears the burden of proving the constitutionality of its actions." *United States v. Playboy Entertainment Group, Inc.,* 529 U.S. 803, 120 S.Ct. 1878, 1888, 146 L.Ed.2d 865 (2000). Under Defendants' argument, a government would have no burden whatsoever to invoke the secondary effects doctrine and thereby obtain lesser judicial scrutiny for legislation restricting First Amendment rights.

We do not conceive of this burden as a rigorous one. Nevertheless, state actors in Defendants' position must cite to *some* meaningful indication—in the language of the code or in the record of legislative proceedings—that the legislature's purpose in enacting the challenged statute was a concern over secondary effects rather than merely opposition to proscribed expression. *Cf. Renton,* 475 U.S. at 48, 106 S.Ct. at 929 ("[t]he District Court's finding as to 'predominate intent,' left undisturbed by the Court of Appeals, is more than adequate to establish that the city's pursuit of its zoning interests here was unrelated to the suppression of free expression"). Imposing this minimal burden is especially important where, as here, the text of the statute itself and the legislature's own express findings may be read to suggest the legislature's purpose was indeed to suppress protected expression based solely on its message and direct effect on observers.[5]

The cases upon which Defendants rely for the contrary view are inapposite for two major reasons. First, those cases do not address the need for a showing that the legislature was motivated by a concern about secondary effects. Instead, they address the evidentiary burden required under the first two prongs of the *O'Brien* test: whether the challenged statute serves a legitimate governmental interest. *See O'Brien,* 391 U.S at 376-77, 88 S.Ct. at 1678-79. In all of these cases, the defendants established that the challenged statute was enacted to combat secondary effects; the primary debate was whether the defendants introduced sufficient evidence to prove that the statute would accomplish that goal.

---

[5]It is well established that a court will not " 'strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive.' " *Renton,* 475 U.S. at 48, 106 S.Ct. at 929 (citation omitted). That principle does not relieve the Defendants of their burden of demonstrating that § 200.11 was enacted for the purpose of combating secondary effects, however.

Second, even with respect to that narrow issue, courts still have insisted on some kind of a minimal evidentiary showing, even if that showing consists of nothing more than proof that the legislature reasonably relied on findings reported elsewhere suggesting a link between the proscribed expression and negative secondary effects. *See, e.g., Pap's,* 120 S.Ct. at 1395 (city could and did "reasonably rely on the evidentiary foundation set forth in *Renton* and *American Mini Theatres* to the effect that secondary effects are caused by the presence of even one adult entertainment establishment in a given neighborhood"); *Sammy's,* 140 F.3d at 997 ("experiences of other cities, studies done in other cities, case law reciting findings on the issue as well as [the officials'] own wisdom and common sense" deemed sufficient); *see also Renton,* 475 U.S. at 51, 106 S.Ct. at 931 ("The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence that the city relies upon is reasonably believed to be relevant to the problem that the city addresses."). Although we have indicated that "there is no constitutional requirement that a city make particularized findings regarding the adverse effects" to be prevented, *Sammy's,* 140 F.3d at 997 n. 6, we have never said that a state actor may prevail under *O'Brien* without pointing to *any* record evidence suggesting a link between the challenged statute and the advancement of the legislature's alleged content-neutral purpose. *See also J&B Entm't, Inc. v. City of Jackson,* 152 F.3d 362, 371 (5th Cir.1998) ("we agree with J&B that the government must produce evidence that the challenged ordinance may advance its interest in combating adverse secondary effects attendant to nude dancing"). The cases cited by the Defendants are therefore unhelpful to its position.

Simply put, Defendants have as yet pointed to no indication that the Alabama Legislature enacted § 200.11 to combat the secondary effects associated with nude dancing such as that offered by Ranch House. The question becomes, therefore, how do we proceed. For a variety of reasons, we believe that the wisest course is to remand this issue to the district court to afford the parties an opportunity to address further this problem.

First, so long as the existing injunction is extended, the prejudice to Ranch House from continued delay in resolving its attack on § 200.11 is minimized substantially. Indeed, Ranch House acknowledged at oral argument that it would not suffer any irreparable harm if this case were remanded with the injunction still in place. Second, it appears that the Defendants made little or no attempt to defend the statute under the secondary effects doctrine during proceedings before the district court; as a result, the district court did not

explore any factual predicate for invoking the doctrine. Although this fact does not excuse the Defendants' failure to make the minimal showing necessary to support a secondary effects argument, we are mindful, given the evidence marshaled on behalf of other legislative bodies in other cases involving related statutes, that the Alabama Legislature's decision-making process in enacting § 200.11 may well have been informed by a concern about the secondary effects of nude dancing venues on the community.

Third, courts have not hesitated to remand for further factfinding when dealing with these types of public decency statutes, especially when the alternative is to declare the statute invalid. *See, e.g., Pap's,* 120 S.Ct. at 1405-06 (Souter, J., concurring in part and dissenting in part) (determining that even though in his view "[t]he record before us does not now permit the conclusion that [the city's ordinance] is reasonably designed to mitigate real harms," the case should be remanded "to give it the opportunity to do so"); *J&B,* 152 F.3d at 373-75 (vacating and remanding where defendant failed to produce sufficient evidence that challenged ordinance would prevent secondary effects); *Phillips v. Borough of Keyport,* 107 F.3d 164, 173 (3d Cir.1997) (en banc) (vacating and remanding in similar circumstances). Fourth, remand will allow Ranch House to consider a more limited as-applied challenge to § 200.11 in addition to the facial challenge it argued below.

Finally, before an enactment of the Alabama Legislature is struck down, we think attorneys representing the State of Alabama should be given an opportunity to be heard. Although we recognize that the State Attorney General's Office was notified of this lawsuit, and could have participated either as an intervenor or as an amicus curie, we are reluctant to consider invalidating this statute without affording the State another chance to become directly involved. We therefore remand this case to afford the Defendants (and the State of Alabama, if it chooses to participate) an opportunity to develop a foundation for their claim that the statute's purpose was to combat secondary effects.[6]

Given this holding, we need not consider at this time—and do not decide—whether § 200.11 could survive intermediate scrutiny. There may be some question as to whether it could do so, however, and therefore we offer a few observations to guide the district court on remand to the extent it reaches this issue.

---

[6]We recognize there may be some competing considerations. There is no suggestion that Defendants were denied an adequate opportunity to develop the record or present evidence before the district court. This lawsuit has already been pending for several years, and even if Defendants could support a secondary effects argument on remand, there may be questions even then about § 200.11's expansive scope. Nevertheless, we do not believe that these considerations outweigh the compelling grounds for a remand, especially in the absence of any meaningful harm to Ranch House by virtue of the injunction that we continue.

When applying intermediate scrutiny, we ask whether (1) the interest allegedly served is within the power of the government; (2) the regulation furthers that interest; (3) the interest served is unrelated to free expression; and (4) any incidental restriction on First Amendment freedoms is no greater than essential to further the asserted interest. *See, e.g., O'Brien,* 391 U.S. at 376-77, 88 S.Ct. at 1678-79; *Sammy's,* 140 F.3d at 996. Ranch House's arguments regarding the first three factors essentially dovetail with its arguments regarding secondary effects, and particularly its emphasis on the lack of even a minimal foundation for the Defendants' position.

Also substantial is Ranch House's objection under the fourth factor of *O'Brien.* According to Ranch House, § 200.11's restrictions on constitutionally protected expression are greater than necessary to serve any legitimate governmental interest in combating the secondary effects associated with nude dancing. Among other things, argues Ranch House, the statute sweeps far too broadly by proscribing on its face not only the type of nude entertainment provided at the Club, but also "serious" artistic entertainment involving nudity, such as plays.

The terms "business establishment" and "for entertainment purposes" as used in the statute appear to include not only nude bars and other "adult entertainment" establishments geared toward erotic arousal, but also other for-profit establishments—such as theaters—in which nudity might be displayed for "serious" artistic purposes. If that reading is correct, then a for-profit theater's performance of the musical *Hair* or another play in which nudity plays a prominent and stylistically meaningful role might well be considered a display of nudity by a business establishment for entertainment purposes.[7] If the statute does indeed reach that far, and would be enforced to its full extent—two questions we cannot and do not answer at this time—then there may be doubt as to whether § 200.11 extends no further than essential to advance the state's interest in combating the social ills associated with nude dancing establishments. *See Wise,* 217 F.3d at 1365 (ordinance passed muster under fourth prong of *O'Brien* because it did "not prohibit all nude dancing, but only restricts nude dancing in those locations where the unwanted secondary effects arise"); *cf. also Triplett Grille, Inc. v. City of Akron,* 40 F.3d 129, 134-35 (6th Cir.1994) (striking down anti-nudity ordinance as facially unconstitutional under the First Amendment overbreadth doctrine because "the City has failed to

---

[7]It may also be at least arguable whether the language of § 200.11 reaches the display at a commercial art gallery of a painting containing nudity. During oral argument counsel for the Defendants suggested that § 200.11 only encompasses live entertainment. No such limitation appears on the face of this provision, however.

demonstrate a link between nudity in non-adult entertainment and secondary effects").

This concern about the scope of § 200.11, although raised squarely by Ranch House, has not yet been adequately addressed either by the Defendants or by the district court. Because of the importance of this issue, we are reluctant to rule without further argument from the parties and findings by the district court. On remand, therefore, the parties and the district court should consider whether § 200.11 would fail under intermediate scrutiny, let alone strict scrutiny, because it proscribes too much protected expression. We do not decide the issue today, however, and for now simply identify the problem and indicate that we think it an issue that warrants more detailed consideration. We therefore vacate the district court's ruling rejecting Ranch House's constitutional challenge to § 200.11, and remand for further proceedings consistent with this opinion.

V.

We next address the constitutionality of the zoning provision, § 200.5(4). Ranch House's primary objection to the constitutionality of § 200.5(4) is the absence of an "amortization" period for existing businesses that would give it adequate time to relocate or change its activities to conform to the new zoning limitations imposed by the statute. Defendants respond that this argument fails because Ranch House cannot assert a total taking of its property, and because § 200.5(4) provides an adequate amortization period to the extent such a provision is required by the Constitution. In fact the statute does not contain an express grandfathering or amortization clause for existing businesses. The authorizing bill, however, did delay § 200.5(4)'s effective date until "the first day of the third month following its passage and approval by the Governor, or its otherwise becoming law." 1998 Ala. Acts 98-467, § 9.

For First Amendment purposes, courts generally treat zoning ordinances regulating adult entertainment venues as so-called "time, place, and manner" restrictions. *See Ward v. County of Orange,* 217 F.3d 1350, 1353 (11th Cir.2000); *David Vincent, Inc. v. Broward County,* 200 F.3d 1325, 1333 (11th Cir.2000) (citing *Renton,* 475 U.S. at 46, 106 S.Ct. at 928). Thus, zoning ordinances that target the social ills associated with adult entertainment are constitutional if they are narrowly tailored to further a substantial government interest and "allow for reasonable alternative avenues of communication." *Id.; see also International Eateries,* 941 F.2d at 1162. Ranch House does not clearly address why it believes that § 200.5(4) fails time, place, and manner inquiry, except in one major respect: it contends that the First Amendment entitles existing businesses forced to relocate or change their operations in response to a new

zoning law to the protections of a grandfathering or amortization clause. According to Ranch House, the absence of such a clause means that § 200.5(4) has the effect of immediately extinguishing protected speech, and thereby violates the First Amendment.

This Court has never ruled on whether or when the First Amendment requires that a new zoning regulation contain a grandfathering or amortization clause for existing, non-conforming businesses. In *David Vincent,* we remarked that "[t]he Constitution ... does not require either [a] waiver provision or the 'grandfathering' clause for existing non-conforming businesses," but specifically observed in a footnote that "[c]ourts have frequently upheld the application of new zoning regulations to existing adult businesses with an amortization period." 200 F.3d at 1333 & n. 11 (citing *Ambassador Books & Video, Inc. v. City of Little Rock, Ark.,* 20 F.3d 858, 865 (8th Cir.1994) and *SDJ v. City of Houston,* 636 F.Supp. 1359, 1370 (S.D.Tex.1986), *aff'd,* 837 F.2d 1268, 1278 (5th Cir.1988)). The zoning law at issue in *David Vincent* had a five-year amortization clause, so the constitutional problem alleged here did not arise in that case. Courts elsewhere have generally assumed that a zoning law targeting protected expression must contain a reasonable grandfathering or amortization clause for existing businesses. *See, e.g., Ebel v. City of Corona,* 767 F.2d 635, 639 (9th Cir.1985) (upholding district court's finding that 60-day amortization period was unsatisfactory to sustain statute's constitutionality in light of the length of the plaintiff's lease and the investment she had made in her adult bookstore); *SDJ,* 636 F.Supp. at 1370 ("An Ordinance which terminates, over time, preexisting nonconforming uses should be carefully scrutinized where first amendment interests are affected.... Use of a reasonable amortization scheme is not only a viable, but also an equitable, means of reconciling the conflict of interests between the public and the nonconforming use."); *Purple Onion, Inc. v. Jackson,* 511 F.Supp. 1207, 1224 (N.D.Ga.1981) (striking down zoning law where its "amortization provisions, combined with its zoning area provisions, are void for greatly restricting public access to speech protected by the First Amendment").

Ranch House relies on this line of cases to assert that § 200.5(4)'s brief "amortization" clause is unreasonable and therefore violates the First Amendment. Cases discussing the need for and reasonableness of a grandfathering or amortization clause typically do so in the context of an as-applied rather than facial challenge, however. We agree that Ranch House's objection is better understood as a challenge to the statute as applied, not on its face. It is unclear whether Ranch House pursued an as-applied challenge to § 200.5(4) before the district court. A remand is therefore appropriate so that Ranch House may assert its objection on

an as-applied basis.

We offer no opinion at this time on the merit of Ranch House's argument. Although as noted above some courts have required that zoning laws of the kind at issue here provide reasonable protection for existing businesses, the constitutional foundation for such a requirement is unclear, and has not been sufficiently addressed by the parties. The Takings Clause does provide some protection for businesses subject to new zoning laws. *See, e.g., Bickerstaff Clay Prods. Co. v. Harris County,* 89 F.3d 1481, 1489 (11th Cir.1996) (Takings Clause "applies in any case in which government action renders private property worthless"). In this case, however, the parties have stipulated that § 200.5(4) does not amount to a total taking of Ranch House's property. And while the First Amendment may impose different and additional constraints on the ability of legislatures to curtail an existing business's protected expression through enactment of a zoning law, we are not aware of any case law discussing how those potential constraints might affect a statute that otherwise would survive time, place, and manner inquiry. Because these questions were neither fleshed out by the parties nor considered by the district court (let alone in the context of an as-applied challenge), the wisest course is to direct the district court to address them on remand.

Moreover, resolution of Ranch House's objection may be aided by additional factfinding on remand. For example, Ranch House seems to be asserting that, in the absence of a reasonable amortization period, § 200.5(4) will require the immediate closure of its business and thereby have the effect of completely denying public access to all protected nude entertainment in Calhoun County during the period necessary for it to relocate. If the Club is one of a small number of venues in the County, and the statute effectively requires at least the temporary closure of substantially all such venues, Ranch House's argument would be strengthened. *See American Mini Theatres,* 427 U.S. at 71 n. 35, 96 S.Ct. at 2453 n. 35 (cautioning against the enactment of zoning regulations that have "the effect of suppressing or greatly restricting access to lawful speech").[8] We cannot determine on this record whether—as Ranch House asserts—§ 200.5(4) amounts to a complete denial of access by adults to this form of constitutionally-protected expression. Remand will permit the district court to address whether enforcing the new zoning regime without an amortization period would immediately suppress substantially all such protected entertainment in Calhoun County (not just that

---

[8]Although the district court specifically found that adequate alternative channels of communication exist under the new zoning regime, presumably the district court was considering only the future availability of alternate sites for nude entertainment under the new regime. *See David Vincent,* 200 F.3d at 1332-33.

at the Club), and also to determine the effect, if any, of that fact.

In short, we do not now decide whether Ranch House was entitled to the protection of an amortization clause during which it could have conformed its operations to § 200.5(4) before the statute's effective date. Nor do we decide whether language in the authorizing bill briefly delaying enforcement of § 200.5(4) provided the functional equivalent of a reasonable amortization clause.[9] Because the questions regarding § 200.5(4) may be substantial, we conclude that the proper course is to remand these issues to the district court for additional proceedings. The district court should address Ranch House's amortization objection to § 200.5(4) on an as-applied basis after seeking additional argument from the parties (and, if it chooses to participate, the State of Alabama), and, to the extent appropriate, conducting additional fact-finding.[10]

We therefore vacate the district court's judgment in favor of the Defendants, and remand the case for further proceedings consistent with this opinion. To preserve the status quo, we also continue this Court's existing injunction prohibiting enforcement of §§ 200.11 and 200.5(4) with respect to Ranch House's existing businesses. This injunction shall remain in effect until further order of this Court.

VACATED AND REMANDED.

---

[9]To the extent that Ranch House *is* constitutionally entitled to the protection of a reasonable amortization clause—a question we do not resolve—the district court on remand should consider whether the bill creating § 200.5(4) provided the equivalent relief. As noted above, the bill delayed the statute's effective date until "the first day of the third month following its passage and approval by the Governor, or its otherwise becoming law." 1998 Ala. Acts 98-467, § 9. That date has long since passed, however, and even that two-month window was effectively unavailable to a business such as Ranch House which rather than closing or relocating immediately went to court with a constitutional challenge. In any event, the two-month window may have been shorter than the amortization periods that courts elsewhere have found acceptable. *Compare Ebel,* 767 F.2d at 639 (60 days insufficient); *SDJ,* 636 F.Supp. at 1371 (six months acceptable).

[10]Ranch House also asserts that the statute is unconstitutional because it does not adequately safeguard existing adult entertainment businesses against the purposeful future encroachment of "protected" buildings (e.g., churches or residences) that would "knock-out" such businesses. The district court should consider this concern as well on remand.