COBB, Judge.
On March 25, 2002, Stephen Ray Quet-gles was convicted of two counts of violating § 13A-12-200.il, Ala.Code 1975, which prohibits displaying genitals. The trial court sentenced him to concurrent five-year sentences, but split the sentences and ordered Quetgles to serve two years, followed by formal probation for five years. This appeal followed.
The facts adduced at trial indicate that, on two separate occasions, undercover police officers paid the cover charge and gained entrance to “sex parties” in what was purported to be a tanning salon owned and operated by Quetgles and his common-law wife. During these “sex parties,” which Quetgles and his common-law wife conducted on Saturday evenings, each person paid a $20 cover charge for refreshments. Guests were then allowed either to participate in the orgiastic activities or simply to watch. Law enforcement officers secretly videotaped the parties twice, each time for several hours. Quetgles and his wife were arrested shortly thereafter and charged.
Quetgles argues on appeal, as he argued at trial, that the statute under which he was convicted is unconstitutional. Specifically, he contends that the statute is over-broad and that it is a content-based restriction on his First Amendment right to free expression.[1]
*913 Section 13A-12-200.il reads, in pertinent part, as follows:
“It shall be unlawful for any business establishment or any private club to show or allow to be shown for entertainment purposes the human male or female genitals, pubic area, or buttocks with less than a fully opaque covering, or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple, or the depiction of covered male genitals in a discernibly turgid state. A violation of this section shall be a Class C felony.”
Both of the arguments raised by Quet-gles have been addressed by the federal court system. In Ranch House, Inc. v. Amerson, 22 F.Supp.2d 1296 (N.D.Ala.1998), the district court upheld the constitutionality of § 13A-12-200.il in the face of, among other things, challenges to the breadth of the statute and to the statute’s effect on citizens’ First Amendment rights. On appeal, the United States Court of Appeals for the Eleventh Circuit discussed in detail the appropriate analysis to test the constitutionality of a statute that appears to proscribe speech or expression based on content:
“As we often have remarked, ‘[w]hether a statute is constitutional is determined in large part by the level of scrutiny applied by the courts.’ [Williams v. Pryor, 229 F.3d 1331, 1334 (11th Cir.2000)]. The Supreme Court in [City of Erie v. Pap’s A.M., 529 U.S. 277 (2000),] recently addressed the proper framework for evaluating what level of scrutiny should be applied to statutes that restrict nude dancing. Although no opinion in that case was joined by more than four Justices, a majority of the Court basically agreed on how these kinds of statutes should be analyzed:
“ ‘[First, a court] must decide “whether the State’s regulation is related to the suppression of expression.” If the governmental purpose in enacting the regulation is unrelated to the suppression of expression, then’ the regulation need only satisfy the “less stringent” standard of [United States v. O’Brien, 391 U.S. 367 (1968),] for evaluating restrictions on symbolic speech. If the government interest is related to the content of the expression, however, then the regulation falls outside the scope of the O’Brien test and must be justified under a more demanding standard.’
“Pap’s, 120 S.Ct. at 1391 (plurality op.) (citations omitted); see also id. at 1402 (Souter, J., concurring in part and dissenting in part) (stating agreement with the ‘analytical approach that the plurality employs in deciding this case’). The defining question, therefore, is whether [§ 13A-12-200.il, AlaUode 1975,] is a content-based regulation of protected expression.
“The Supreme Court recently reiterated that the hallmark of a content-based regulation is the government’s purpose to suppress the message conveyed by the speech or expression at issue. See Hill v. Colorado, 530 U.S. 703, 120 S.Ct. 2480, 2491, 147 L.Ed.2d 597 (2000) (‘ “The principal inquiry in determining content neutrality, in speech cases generally ... is whether the government has adopted a regulation of speech because of disagreement with the message it conveys.... As we have repeatedly explained, government regulation of expressive activity is ‘content-neutral’ if it is justified without ref *914 erence to the content of regulated speech”.’) (quoting Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 2754, 105 L.Ed.2d 661 (1989)). Thus, if a regulation of expression may be justified without reference to the contents of the expression, the regulation is considered content-neutral. This point is critical, because the fact that a statute refers to the content of expression does not necessarily make it content-based if it was enacted for a valid purpose other than suppressing the expression due to a disagreement with the message conveyed or a concern over the message’s direct effect on those who are exposed to it. Section 200.11 does distinguish among the forms of expression being proscribed — it is not all nudity, but rather only nudity for entertainment purposes, that the Alabama Legislature has sought to ban. Thus, in a narrow sense, § 200.11 is not ‘neutral’ as to content because it explicitly permits certain types of nude expression while restricting other types of nude expression based entirely on whether the expression is for entertainment' purposes. Ranch House emphasizes this fact heavily. As noted above, .however, both the Supreme Court and this Court have framed the inquiry more broadly, by focusing on the purpose of the legislature in enacting the challenged law.
“The most relevant line of cases illustrating this point — and the line of cases relied upon by Defendants here — involves the so-called secondary effects doctrine, as first set forth by the Supreme Court in City of Renton v. Playtime Theatres[, 475 U.S. 41 (1986)]. The ordinance at issue in Renton prohibited any ‘adult motion picture theater’ from locating ‘within 1,000 feet of any residential zone, single- or multiple-family dwelling, church, or park, and within one mile of any school.’ The term ‘adult motion picture theater’ was defined as ‘[a]n enclosed building used for presenting motion picture films ... or any other such visual media, distinguished or characterized] by an emphasis on matter depicting, describing or relating to “specified sexual activities” or “specified anatomical areas” ... for observation by patrons therein.’ The plaintiff argued that the ordinance was a content-based regulation of speech that should be given strict scrutiny rather than analyzed under the less exacting intermediate scrutiny applied to content-neutral ‘time, place, and manner’ laws. The Court disagreed, and in the process illustrated that a statute is not necessarily content-based simply because on its face it distinguishes among types of speech based on their contents:
“ ‘This Court has long held that regulations enacted for the purpose of restraining speech on the basis of its content presumptively violate the First Amendment. On the other hand, so-called “content-neutral” time, place, and manner regulations are acceptable' so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues, of communication.
“ ‘At first glance, the Renton ordinance ... does not appear to fit neatly into either the “content-based” or the “content-neutral” category. To be sure, the ordinance treats theaters that specialize in adult films differently from other kinds of theaters. Nevertheless, as the District Court con-eluded, the' Renton ordinance is aimed not at the content of the films shown at “adult motion picture theatres,” but rather at the secondary effects of such theaters on the surrounding community. The District Court found that the *915 City Council’s “predominate concerns” were with the secondary effects of adult theaters, and not with the content of adult films themselves.... The ordinance by its terms is designed to prevent crime, protect the city’s retail trade, maintain property values, and generally “protec[t] and preserv[e] the quality of [the city’s] neighborhoods, commercial districts, and the quality of urban life,” not to suppress the expression of unpopular views.... In short, the Renton ordinance is completely consistent with our definition of “content-neutral” speech regulations as those that “are justified without reference to the content of the regulated speech.” The ordinance does not contravene the fundamental principle that underlies our concern about “content-based” speech regulations: that “government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views.” ... ’
“475 U.S. at 46-48, 106 S.Ct. at 928-29 (citations omitted [in Amerson]).
“In Renton, the Court recognized that a statute which on its face distinguishes based on content is not necessarily content-based for purposes of First Amendment analysis. The ultimate question is whether the legislature’s purpose is to suppress the content of the proscribed message because of a disagreement with that message or concern over the direct effect of that message on its observers. The secondary effects doctrine conceived by the Supreme Court is used to determine whether a statute is content-based, by looking for a legislative purpose independent of the legislature’s hostility to the underlying message. Asserting, as Ranch House does, that secondary effects analysis ‘does not apply’ to a content-based statute therefore misunderstands the proper inquiry:
“This Circuit recently illustrated how the secondary effects doctrine works and, just as importantly, why a statute that on its face refers to content is not necessarily content-based and thereby subject to strict scrutiny. In Sammy’s of Mobile, Ltd. v. City of Mobile, 140 F.3d 993 (11th Cir.1998), cert. denied, 529 U.S. 1052, 120 S.Ct. 1553, 146 L.Ed.2d 459 (2000), this Court upheld against First Amendment attack a city ordinance making it unlawful for any establishment ‘licensed to sell [liquor] under the laws of the State of Alabama, knowingly to exhibit ... or be connected with, any motion picture, show, performance, or other presentation upon the licensed premises, which, in whole or in part, depicts nudity or sexual conduct or any simulation thereof.’ The preamble to the ordinance declared that the goal of the statute was to avoid the ‘undesirable behavior’ and ‘disturbances associated with mixing alcohol and nude dancing....’ The plaintiff argued that the ordinance was content-based because it referred only to a particular type of expression: adult-oriented nude entertainment. This Court rejected that argument, explaining that ‘[t]he Supreme Court ... does not equate reference to content with suppression of content.’ Id. at 998 (adding that the Supreme Court applies an ‘intermediate level of scrutiny to ordinances which distinguish between nude and clothed entertainment, but which are aimed only at the secondary effects of nude entertainment’) (citing, inter alia, Young v. American Mini Theatres, Inc., 427 U.S. 50, 71 n. 34, 96 S.Ct. 2440, 2453 n. 34, 49 L.Ed.2d 310 (1976) (‘[i]t is [the] secondary effect [of crime and urban deterioration] which these zoning ordinances at *916 tempt to avoid, not the dissemination of “offensive speech” ’)).
“Simply looking at the language of the statutes at issue in cases like Renton and Sammy’s demonstrates why § 200.11 is not content-based solely because that provision distinguishes between nudity for entertainment purposes and nudity generally. Contrary to Ranch House’s argument, while the fact that a statute expressly targets a particular form of nudity is certainly relevant in determining whether the statute’s purpose is to suppress that particular form of expression, see Pap’s, 120 S.Ct. at 1391, it is not necessarily dispositive of the inquiry. To answer the question fully, we need to explore other indications of the legislature’s purpose in enacting the challenged statute.
“It is at this stage of the analysis that Ranch House’s argument may become more persuasive. Invoking Renton, the Defendants claim that § 200.11 was passed not for the purpose of suppressing the message associated with nude dancing, but rather to prevent the secondary - effects of nude entertainment venues on the surrounding community. In determining whether the purpose of a law is to suppress protected speech, a court may examine a wide variety of materials, including the text of the statute, any preamble or express legislative findings associated with it, legislative history, and studies and information of which legislators were clearly aware. See, e.g., Colacurcio v. City of Kent, 163 F.3d 545, 552 (9th Cir.1998) (‘We will look to the full record to determine whether evidence indicates that the purpose of the ordinance is to suppress speech or ameliorate secondary effects. In so doing, we will rely on all “objective indicators of intent, including the face of the statute, the effect of the statute, comparison to prior law, facts surrounding enactment, the stated purpose, and the record of- proceedings.” ’ .(citation omitted [in Amerson])), cert. denied, 529 U.S. 1053, 120 S.Ct. 1553, 146 L.Ed.2d 459 (2000).
“Our task, therefore, is to examine the record and determine whether the Alabama Legislature’s purpose in restricting the display of nudity for entertainment purposes was borne of disagreement with the message conveyed by nude dancing, or rather a desire to ameliorate the perceived negative effects of nude dancing venues on the safety, health, and welfare of the surrounding community. There is little question that, if the statute were enacted for the latter purpose, it would be deemed content-neutral and only intermediate scrutiny would apply.' See Pap’s, 120 S.Ct. at 1394 (statute regulating public nudity properly evaluated as content-neutral because the legislature’s ‘interest in combating the secondary effects associated with [nude dancing] clubs is unrelated to the suppression of the erotic message conveyed by nude dancing’). The difficulty, however, is that Defendants’ claim regarding the Alabama Legislature’s purpose is not evident on this limited record.
“Rather than bolstering a secondary effects argument, as Defendants contend, the materials available to us, at least at first blush, may tend to suggest that the Legislature’s purpose was indeed to suppress nude dancing based on opposition to the message which that particular form of expression conveys. The relevant text of § 200.11, as noted above, expressly targets nude entertainment as opposed to other displays of nude expression. Moreover, the statute expressly prohibits not only nudity at topless bars and other adult-oriented establishments, but also, it seems, nudity *917 displayed at theaters and other ‘serious’ for-profit entertainment venues not ordinarily linked to negative secondary effects.
“Although the introductory section of the bill that added § 200.11 to the Act records a concern with ‘obscene nuisances,’ see 1998 Ala. Acts 98-467, neither the specific language adding § 200.11 nor the bill itself refers to the kind of non-obscene nude dancing offered by Ranch House, or suggests that venues providing such expression constitute a public nuisance. In addition, although the amended Act contains a zoning clause (§ 200.5(4)) limiting where ‘adult-oriented enterprise^]’ may operate, the fact that such a clause is commonly justified by secondary effects does not establish that the Legislature enacted § 200.11 to combat secondary effects. Indeed, the inclusion of § 200.11 as a separate provision in the same bill as § 200.5(4) arguably suggests that the Legislature intended § 200.11 to accomplish something more than preventing secondary effects associated with nude dancing. The text of the statute, in sum, may not at first blush demonstrate a legislative purpose to combat secondary effects.
“Similarly, the express legislative findings in the bill adding § 200.11, rather than supporting a secondary effects argument, also may tend to suggest that the Alabama Legislature’s purpose was to suppress the message conveyed by nude dancing because of a disagreement with that message. The relevant legislative findings stated in the bill are as follows:
“ ‘The Legislature of Alabama finds and declares:
“ ‘(1) That in order to protect children from exposure to obscenity, prevent assaults on the sensibilities of unwilling adults by the purveyor of obscene material, and suppress the proliferation of “adult-only video stores,” “adult bookstores,” “adult movie houses,” and “adult-only entertainment,” the sale and dissemination of obscene material should be regulated without impinging on the First Amendment rights of free speech by erecting barriers to the open display of erotic and lascivious material.
“ ‘(2) That the premises in which a violation of [the Act] occurs should be declared a public nuisance.’
“1998 Ala. Acts 98-467, § 1. The first legislative finding, by its terms, applies only to displays of obscenity, not to displays of non-obscene nude entertainment. Moreover, it may be read as focusing on the content of the proscribed message and the perceived effect of that message on listeners. As such, it would tend to undermine rather than support Defendants’ secondary effects argument. See, e.g., Boos v. Barry, 485 U.S. 312, 321, 108 S.Ct. 1157, 1163, 99 L.Ed.2d 333 (1988) (‘Regulations that focus on the direct impact of speech on its audience present a different situation. Listeners’ reactions to speech are not the type of “secondary effects” we referred to in Renton.’). The second legislative finding, meanwhile, adds little to the analysis. It seems to declare that establishments such as the. Club are public nuisances. It does so, however, only because those establishments permit a form of expression proscribed in different contexts by different provisions of the Act, not because of the negative effects of that expression on the surrounding community.
“Defendants have not yet countered these points. Nor have they offered any legislative history or other record evidence tending to support the claim that *918 the Alabama Legislature enacted § 200.11 to ameliorate secondary effects associated with nude dancing. Defendants simply take the position that they are not required to make any showing regarding the Alabama Legislature’s purpose in enacting § 200.11. In essence, they say, we should simply assume that the Legislature’s purpose was to combat the negative impact on health, safety, and welfare allegedly caused by venues that provide nude dancing.
“That argument goes too far, however. We are aware of no case where a court has adopted that proposition or sustained a secondary effects argument in the absence of any indication that the relevant legislative body intended to ameliorate such effects. Secondary effects doctrine is an exception to the general rule that a statute which on its face distinguishes among particular types of speech or expression by content is subject to the strictest scrutiny. See Artistic Entertainment, Inc. v. City of Warner Robins, 223 F.3d 1306, 1308 (11th Cir.2000) (‘regulations that restrict protected expression based on its content are subject to strict scrutiny’); see also R.A. V. v. City of St. Paul, 505 U.S. 377, 382, 112 S.Ct. 2538, 2542, 120 L.Ed.2d 305 (1992) (‘The First Amendment generally prevents government from proscribing speech, or even expressive conduct, because of disapproval of the ideas expressed.’ (citations omitted [in Amerson])). Adopting Defendants’ broad argument would permit the exception to swallow the rule, and would permit the proscription of protected speech far in excess of what the First Amendment allows. Additionally, Defendants’ argument renders meaningless the rule that ‘[wjhen the Government restricts speech the Government bears the burden of proving the constitutionality of its actions.’ United States v. Playboy Entertainment Group, Inc., 529 U.S. 803, 816, 120 S.Ct. 1878, 1888, 146 L.Ed.2d 865 (2000). Under Defendants’ argument, a government would have no burden whatsoever to invoke the secondary effects doctrine and thereby obtain lesser judicial scrutiny for legislation restricting First Amendment rights.”
Ranch House, Inc. v. Amerson, 238 F.3d 1273, 1278-83 (11th Cir.2001) (footnote omitted).
The Eleventh Circuit Court of Appeals remanded the cause to the district court for “further argument and development of the record on several critical issues,'including Defendants’ claim that § 200.11 is intended to combat the ‘secondary effects’ of nude entertainment,” 238 F.3d at 1275, stating:
“This concern about the scope of § 200.11, although raised squarely by Ranch House, has not yet been adequately addressed either by the Defendants or by the district court. Because of the importance of this issue, we are reluctant to rule without further argument from the parties and findings by the district court. On remand, therefore, the parties and the district court should consider whether § 200.11 would fail under intermediate scrutiny, let alone strict scrutiny, because it proscribes too much protected expression. We do not decide the issue today, however, and for now simply identify the problem and indicate that we think it an issue that warrants more detailed consideration. We therefore vacate the district court’s ruling rejecting Ranch House’s constitutional challenge to § 200.11 and remand for further proceedings consistent with this opinion.”
238 F.3d at 1285-86.
On remand, the district court followed the edict of the Eleventh Circuit *919 Court of Appeals and applied the doctrine of negative secondary effects. Ranch House, Inc. v. Amerson, 146 F.Supp.2d 1180 (N.D.Ala.2001). The district court held that the State met its burden of proving that the state legislature’s predominant motive in passing the statute “was a concern about increased crime and other secondary effects.” 146 F.Supp.2d at 1202. The district court then applied an intermediate scrutiny test “to determine whether, regardless of the availability of the negative secondary effects doctrine, the statute [was] still unconstitutional.” Id. at 1203. The district court found that the statute passed constitutional muster in that “ § 200.11 restricts no more of the plaintiff’s expression than is essential to accomplish the government’s substantial interest in protecting public order and morality by combating the negative secondary effects of nude entertainment.” Id. at 1206.
As for the overbreadth argument, the district court found:
“This court concludes that the statute should be considered as applied to businesses of the kind that is operated by the plaintiff, which was the obvious purpose of the Alabama Legislature, since its concern about the secondary effects of those businesses spawned the 1998 amendments. This court is satisfied that the Alabama Supreme Court would construe the statute[ ] so that issues of overbreadth are avoided. There is the further question of whether the plaintiff can even raise the issue as to expressive activities other than its own. This court thus rejects any overbreadth challenge to § 200.11. Further, this court concludes that the plaintiff has not mounted a successful facial challenge to § 200.11. See United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987) (successful facial challenge must establish that no set of circumstances exists under ■ which the challenged statute would be valid).”
Id. at 1208-09.
Quetgles’s arguments on appeal have been addressed and resolved in the Ranch House opinions. Therefore, we adopt in this opinion the holdings of the district court and hold further that, because § 13A-12-200.il does not violate the free speech guarantee of the First Amendment and is not overbroad, Quetgles’s arguments are without merit.
For the reasons stated above, the judgment of the trial court is affirmed.
AFFIRMED.
McMILLAN, P.J., and BASCHAJB, SHAW, and WISE, JJ., concur.

. Quetgles’s argument in brief is entitled, "13A-12-200.il, CODE OF ALABAMA, AS AMENDED, IS SO VAGUE AND AMBIGUOUS THAT IT FAILS ON CONSTITUTIONAL GROUNDS.” However, in the body of his argument, he contends that the statute abridges his First Amendment right to self-expression and that the statute is overbroad. He does not offer any argument regarding the statute’s alleged vagueness. We address *913 Quetgles’s arguments as he presents them in the body of the brief.